IRA DAY *v.* LEWIS CLARK AND F. N. DOWNING.

[IN CHANCERY.]

*Mortgages.   Record.   Paramount title, &c.*

Where K. gave four promissory notes to P., and D. endorsed the said notes as surety, and K. also mortgaged certain premises to secure the payment of the said notes to P.; afterwards K. sold and conveyed the same premises to M., and took back a mortgage of the premises from M., to secure the payment of certain notes given for the purchase money; M. put his deed, and so did K. the mortgage deed from M. on record, before P. put the mortgage from K. on record, which was

given to secure the payment of the said four notes; M. sold and conveyed all his interest in the premises to G., and K. sold to L. the notes against M., and assigned the mortgage given to secure said notes; G. sold and conveyed his title and interest in the premises to C., and C. purchased mortgage notes of L., and took a quit-claim deed from L., and also purchased the notes which P. held against K., and upon which D. was surety; C. then commenced his action at law upon the last named notes against K., and D. the surety; K. had become insolvent, and D. brought his bill in chancery, to have the mortgage property applied in payment of the said notes, and to enjoin C. from further prosecuting his suit at law upon them; under these facts, *it was held,* that though M. had notice of P.'s mortgage, so that P.'s mortgage as to M. had the priority, still G., being a *bona fide* purchaser, and not affected with notice of P.'s mortgage, G. has a paramount title to the P. mortgage; and C. having bought in the mortgage notes assigned to L. by K., C. took L.'s title under the mortgage, also the title or equity of redemption under G.; C. would thus be enabled to stand upon G.'s title; and if G. had the first title, not being affected with notice to M. of the P. mortgage, then such title will pass under G.'s deed to C., and be paramount to a title under P.'s mortgage; and if P. could not have enforced his mortgage against G. or his grantees, D., the orator, cannot.

APPEAL from the Court of Chancery. The orator alleged in his bill, that on the 24th day of January, 1838, one Amos M. Kimball executed four promissory notes, payable to the Peaslee heirs, so called, and dated the said notes January first, 1838 ; and that the orator endorsed the said notes upon their backs, as surety for said Kimball ; that the notes were delivered to the guardian of the said heirs ; and on the same 24th day of January, 1838, said notes were secured by mortgage, by said Kimball.

That three of said notes, on the first day of January, 1846, were sold and transferred to the defendant, Lewis Clark, and that said Clark has sued the orator and said Kimball on the said notes, and obtained judgment in the County Court against the orator, and that said suit is now pending in the Supreme Court on exceptions. That said Kimball has long been insolvent, and the orator has no security for endorsing said notes, and will suffer loss of the whole amount, unless the mortgage to the said Peaslee heirs shall be applied to the payment of the said notes.

And that on the 30th day of January, 1838, said Amos M. Kimball conveyed the same premises, so mortgaged to said heirs, to Adin and Theron A. Miles, with lot No. 13, range 17 ; and on the same day, the said Adin and Theron A. Miles mortgaged the same premises to the said Amos M. Kimball, to secure the purchase money, ($2,100,) specified in twelve promissory notes, and that

the mortgage was recorded the same day; that said Adin and Theron A. Miles had notice of the Kimball mortgage to the said Peaslee heirs, when they took their deed, though not then recorded, and not recorded till the 9th day of March, 1838. And that on the first day of March, 1843, said Amos M. Kimball sold and transferred two of said notes, given by said Adin and Theron A. Miles, for said farm, to one Luther M. Martin, the said two notes being for the sum of $200 each; and on the same day, said Kimball also sold to one Allen Martin three of the said notes against the said Adin and Theron, for $200 each; and to secure said notes, said Kimball assigned the said mortgage executed by said Adin and Theron A. Miles, to the said Luther M. and Allen Martin; and that in like manner, the said Amos M. Kimball, on the 17th day of February, 1843, sold one of said notes of $200, embraced in said mortgage, to one John H. Kimball, and assigned for security said mortgage to said John H.

The orator also charges notice in his bill to the said Martins and John H. Kimball, of said prior mortgage to the said Peaslee heirs.

That on the 8th day of April, 1843, said Adin Miles conveyed all his interest in said premises to said Theron A. Miles; and on the 17th day of April, 1843, said Theron A. Miles quit-claimed to one Granville R. Gale the same premises, and that said Gale had knowledge of the Peaslee mortgage, and that the Mileses purchased with like knowledge.

That Luther M. Martin, Allen Martin, and John H. Kimball, brought a bill in chancery against the said Adin and Theron A. Miles, Amos M. Kimball, Granville R. Gale, and the Peaslee heirs, to foreclose the premises, and set out in their bill that the Peaslee mortgage was not recorded until after the mortgage to said Amos M. Kimball from the said Adin and Theron A. Miles; and that the Mileses had no notice of the Peaslee mortgage.

And that the Peaslee heirs answered the bill, and insisted that said Adin and Theron A. Miles had notice of their mortgage when they took their deed and mortgaged back to said Amos M. Kimball; and that when the said Martins and John H. Kimball acquired their interest in the Miles mortgage and notes, the Peaslee mortgage was on record.

The defendants answered, claiming paramount title; the answer was traversed, and testimony taken. While the suit was pending,

to wit, on the third day of April, 1845, the said Gale conveyed all his interest and title to the premises, to the said Martins and John Kimball.

And on the 17th day of April, 1845, the said Lewis Clark purchased of the said Martins and John H. Kimball, all the notes which they had bought against the said Adin and Theron A. Miles, and they quit-claimed to him. The facts are fully stated in the opinion.

*Peck & Colby* for orator.

1. Clark took the notes when they were overdue, and subject to any defence at law or in equity to which they were liable in the hands of the Peaslees. Clark represents them, and is bound by their admissions, made while holders of the notes.

The orator is in fact surety for Kimball. This is admitted by the answer. We insist that if the Peaslees were in the position of Clark, holding both mortgages and the equity of redemption, they could not enforce these notes against the orator. The estate being sufficient to pay the notes, will, in equity, be so applied. *Smith* v. *Day*, in Washington Co., 1848. *Niles & Atkins* v. *Moulton*, 11 Vt. 470. *Converse* v. *Cook*, 8 Vt. 164.

The Peaslees could not postpone this mortgage to the Miles mortgage if in their hands, as they have answered in a foreign suit that the latter mortgage was given and taken with knowledge of their mortgage.

It would seem that Clark is in the same position. He derives title from the Peaslees, and is *affected* if not *concluded* by their admissions. *Countess of Darth.* v. *Roberts*, 16 East. 334. 1 Greenleaf's Ev. 189. 1 Ld. Raymond, 310.

An answer in chancery is of almost irresistible force, not only against the person who filed it, but all claiming under it. Gresley's Eq. Ev. 323. 1 Greenleaf's Ev. sec. 179.

*Clark* purchased the notes in suit, after the former chancery case was ready for a hearing. That was a *lis pendens* to him and all the world, and when he purchased the notes he took them with knowledge that Peaslee claimed that they were a *prior* lien on the premises. *Hayden* v. *Bucklin et al.*, 9 Paige, 512.

In his answer, Clark says: " the object of buying the notes was " to enable me to get the title of said premises free from any in- " cumbrance."

Day *v.* Clark et al.

He thus admits that these notes were an incumbrance, and for that reason he purchased them, so as to remove the *lien*, by collecting them from the surety. This he ought not to be permitted to do.

2. The legal and equitable title being united in Clark, equity requires that these notes should be regarded as *merged.* The whole controversy should be settled in this suit. If Clark is permitted to collect the notes of the orator, he has no remedy, (Kimball being admitted to be insolvent,) except what he may claim upon the Peaslee mortgage, which has passed into the hands of Clark. The assignment of the notes to Clark, transferred in equity the mortgage given to secure them.

3. But all questions are put at rest, if the fact be found that the Mileses had notice of the fact of the mortgage to Peaslees, at the time they took their deed from Kimball. This fact, we submit, is fully proved.

4. If the Mileses had notice at the time they took their conveyance, that should be regarded as conclusive in this case; for—

1. The defendants do not insist that they are *bona fide* purchasers without notice, or that those under whom they claim are such.

2. The Peaslee mortgage was recorded March, 1838, and long before the Mileses transferred either of the Kimball notes, or made any conveyance of the premises; so that in fact, all the parties claiming any interest in the premises under Miles, had constructive knowledge of that mortgage. The result is this—that Miles had notice in *fact*, and subsequent purchasers *constructive* notice.

5. The case stands in precisely the same position as to all parties claiming any interest under the mortgage from Miles to Kimball. Kimball knew of the Peaslee mortgage, for it was executed by him, and those who subsequently purchased of him the Miles notes had *constructive* notice.

*Hebard & Martin* for defendants.

I. The orator's bill should be dismissed for want of equity.

The suit at law, which the orator seeks to have enjoined, is for the recovery of a note signed by the orator as surety. He sets up the facts in his bill, which amount to a defence to that suit, either in law or equity. He was liable to be sued upon those notes at any time after they became due, without recourse to, and irrespect-

ive of, the mortgages; and if the original payees of the notes had sued and collected of the orator, instead of transferring them to Clark, the orator would have acquired no interest in the mortgaged premises, without the concurrence and consent of Kimball, before he parted with his title.

Clark being now the *bona fide* holder and owner of the notes, is entitled to all the benefit and advantage of the signature of the orator, that the original payees had.

The original payees were never obliged to, nor did rely upon, this mortgage security; but their reliance in *fact* was, as it was in *law*, upon the signature of the orator.

II. That the defendants own the mortgaged premises does not operate against the claim to recover these notes. The premises were not paid for by these notes, but wholly and fully by other money. Clark has derived no title to the premises, which was derived from, or proceeded through, the Peaslee mortgage.

III. In the collection of these notes, Clark stands precisely like any other *bona fide* purchaser of the notes, without the assignment of the mortgage, and may proceed to collect them as any other purchaser might do, or as the Peaslees might have done—pursue the endorser instead of the mortgage.

IV. It is a maxim in the law, that every man must bear his own misfortunes, and if the orator has had the *misfortune* to undersign for an irresponsible man, neither *law* nor *equity* will transfer the misfortune from him to an innocent and *bona fide* holder of the notes. If there is to be a loss, both law and morality assign the loss to the party who has solemnly and voluntarily promised, and not to the one who has parted with his money upon the strength of that promise.

V. The defendants in this bill are not to be in any way affected by the proceedings in the other bill. They were not parties in that suit, and it was not prosecuted for their benefit, and the subject matter of that suit was not connected with this, and no way identical with it.

Nor are the files in that suit evidence in this.

The opinion of the court was delivered by

BENNETT, J. The object of the bill is to enjoin a suit at law, brought by Clark against the orator. Many of the facts in the

Day *v*. Clark et al.

case are not matter of dispute.  It seems that in January, 1838, one Amos M. Kimball executed to the Peaslee heirs, as they are called, his four notes of hand, and secured them by a mortgage of certain lands; but this mortgage was not put upon record *until the 9th day of March,* 1838.  The orator was holden upon the four mortgage notes, as a co-promissor; and Kimball, soon after his mortgage to the Peaslee heirs, conveyed the same premises to Adin and Theron A. Miles, and took from them at the same time a mortgage to secure the purchase money, specified in certain notes, and both the deed and mortgage were recorded, before the mortgage to the Peaslee heirs was.  The suit, which the orator seeks to enjoin, is brought by Clark on three of the notes given by Kimball to the Peaslees, and embraced in the Peaslee mortgage, and upon the back of which Day, the orator, put his name.  These notes, Clark purchased in January, 1846.  Day, who stands as surety upon the Peaslee notes, seeks to have the mortgage property applied in payment of these notes, and a further prosecution of the suit upon them enjoined.

Clark sets up in his answer, and claims a paramount title as derived from Adin and Theron A. Miles, and it becomes important to see how the parties stand in this respect.  Though Adin and Theron A. Miles first put their deed on record, yet if they had notice of the Peaslee mortgage, when they purchased, it would, as to them, have a priority.  There may be some doubt whether they had such notice, at the time they purchased; but from the evidence we are inclined to the belief that they had.  It is not important that we should take time with this part of the case, it being purely matter of fact.  As we find Adin and Theron A. Miles had notice of the Peaslee mortgage, and Kimball must necessarily have had notice, the Peaslee title must be *the elder and better title,* so far as they are concerned.

We find, however, that in 1843, Kimball assigned to one Luther M. Martin, the notes he held against Adin and Theron A. Miles, to the amount of four hundred dollars; and to one Allen Martin, to the amount of six hundred dollars; and to John H. Kimball to the amount of two hundred dollars; and to secure the notes, transfers also the Miles mortgage.  Adin Miles then conveys his equity of redemption to Theron A. Miles, and Theron then conveys the whole equity of redemption to Granville R. Gale.  Unless Gale

is to be affected with notice, he has a paramount title to the Peaslee mortgage, and we do not see that he can be.   When the Peaslee deed was recorded, it is true, that was notice to all subsequent claimants, that there was such a mortgage; but the record of that mortgage was no notice to Gale, that when Adin and Theron A. Miles bought of Kimball they had notice of the Peaslee mortgage; and without such notice, the title to Gale derived from Adin and Theron A. Miles must override the Peaslee mortgage.

It has long been settled, that if a fraudulent conveyance is made, and the fraudulent grantee conveys to a *bona fide* purchaser, without notice, his grantee takes a valid title; and if the grantee has notice, at the time he purchases, of an outstanding unrecorded deed, it will not do to affect his grantee with such notice, unless he knew that his grantor had such notice at the time he purchased.   Unless this is shown, he has a right to rely upon the record title.

In 1846, Clark bought in the mortgage notes assigned to the Martins and John H. Kimball, and took their title under the mortgage from Adin and Theron A. Miles, and also the title or equity of redemption from Gale, which they had before bought in.   This enables Clark to stand upon Gale's title; and if Gale had the first title, not being affected with the notice to the Mileses of the Peaslee mortgage, then such title will pass under his deed to Clark, and be paramount to a title under the Peaslee mortgage.

If the Peaslees could not have enforced their mortgage against Gale or his grantees, the orator cannot.   There is no pretence but what Gale was a *bona fide* purchaser, for a valuable consideration, and his title was paramount to the Peaslee title; and as Clark has that title, together with the assignment of the mortgage title from the Martins and John H. Kimball, he has the paramount title. Those who took title under the mortgage from Amos M. Kimball must have been apprised that he knew of the unrecorded deed to the Peaslees, when he took the mortgage from the Mileses, as he was the person who executed it.   But this does not apply to the title derived by the conveyance of their equity of redemption.

With these views, the decree of the Chancellor must be affirmed, with costs.