### CHARLES R. WOODS *v.* L. A. GARNETT ET AL.

1. BONA FIDE PURCHASER.  *Notice of deed.*  Code 1892, § 2460.

    Although § 2460, code 1892, provides that an instrument recorded
    without acknowledgment or proof shall not be notice to creditors
    or subsequent purchasers for value, if one takes a trust-deed on
    land after having read on the record a prior trust-deed on the
    property, though not properly acknowledged, he is not an inno-
    cent purchaser.  His duty to make further inquiry charges him
    with such notice as inquiry honestly made would have disclosed.

2. DEEDS.  *Registration of.  · Notice.*  Code 1892, §§ 2457–58.

    Under § 2457, code 1892, providing that conveyances shall be void as
    to creditors and purchasers for value unless acknowledged and
    lodged for record, and § 2458 providing that they shall take effect
    as to such persons only from the time when so delivered, where a
    trust deed is made to one who fails to record it until after another
    has received and recorded a trust deed on the same land, but with
    knowledge of the first deed, a purchaser under the last, though
    having no actual knowledge of the facts, is not protected as against
    the prior deed if, at the time of his purchase, it has been recorded.

FROM the chancery court of Sunflower county.

HON. W. R. TRIGG, Chancellor.

Bill to cancel defendant's claim to certain land and to recover
possession.  Decree for defendants.  Complainant appeals.  The
opinion sufficiently states the facts.

*J. Holmes Baker*, for appellant.

Mrs. D. L. Garnett and Mrs. L. A. Garnett were both pur-
chasers with notice of appellant's rights.    Although the Pond
trust deed was not properly recorded until October 7, 1892,
Cocke & Co. had actual notice of it before receiving their trust-
deed.    Section 2457 of code 1892 requires the record of instru-
ments in order to give notice, but makes an exception as to pur-
chasers with notice or without valuable consideration.    The case
of *Wasson* v. *Conner*, 54 Miss., 351, is no support for the'conten-
tion of counsel that although Lester saw the imperfectly acknowl-
edged deed on record, he was not affected with notice thereof.

Notice is actual when one either has knowledge of a fact, or
is conscious of having means of knowledge, although he may
not use them.    Whatever puts a party upon inquiry amounts
to notice, provided the inquiry becomes a duty and would lead
to knowledge of the requisite facts by the exercise of ordinary
diligence.    16 Am. & Eng. Enc. L., 790, 792, 793, 795;
*Dixon* v. *Doe*, 23 Miss., 84.

If Cocke & Co. had been *bona fide* purchasers, Mrs. D. L.
Garnett could possibly shelter her title by their good faith.
*Price* v. *Martin*, 46 Miss., 489; *Harrington* v. *Allen*, 48 *Ib.*,
492; 20 Am. & Eng. Enc. L., 589.    But she purchased after
the Pond trust-deed had been properly recorded, and was there-
fore charged with constructive notice.    *Wailes* v. *Cooper*, 24
Miss., 208; *Learned* v. *Corley*, 43 *Ib.*, 687.    The law con-
clusively presumes that she had full notice of the Pond trust-
deed; otherwise, the entire purpose of our registry laws would
fail.    On this point see 5 Am. & Eng. Enc. L., p. 446; 2
Greenl. on Ev., 297.    For a discussion of this particular ques-
tion, see 20 Am. & Eng. Enc. L., p. 599 and note 2.

A careful examination of the evidence conclusively shows
that no part of the land was ever used or occupied by Riley as
a homestead.    On this point, we refer to *Campbell* v. *Adair*,
45 Miss., 170; *Majors* v. *Majors*, 58 *Ib.*, 806; *Cummings* v.
*Busby*, 62 *Ib.*, 195.

*Campbell & Starling*, on the same side.

Seeing the prior trust-deed on the record was notice to Lester and to his firm.    Actual notice of the record of the deed, though not entitled to be recorded, is notice of the deed itself.    Wade on Notice, § 250; 24 N. H., 481; 3 Pa., 67; 5 Or., 413.

We are aware of the rule that one who purchases property for a valuable consideration, without notice of a prior unrecorded deed from one who bought with notice thereof, will acquire a good title, as was held in *Price* v. *Martin*, 46 Miss., 489; *Harrington* v. *Allen*, 48 *Ib.*, 492; *Valley Co.* v. *Railroad Co.*, 58 *Ib.*, 846.    But this rule does not apply to the case at bar.    The common law rule applies as against the original vendor of the fraudulent grantee.    If a purchaser whose deed is recorded has notice of a prior unrecorded deed, which is subsequently recorded before the vendee in the first deed conveys to an innocent purchaser, the record of the prior deed will be constructive notice to all who purchase thereafter.    20 Am. & Eng. Enc. L., 599; Tiedeman on Real Prop., § 817; Wade on Notice, § 251*a*; 3 Washburn on Real Prop., p. 291.    See, also, note to 31 Am. Dec., 283; 2 Metc. (Mass.), 619; *Valley Co.* v. *Railroad Co.*, 58 Miss., 846.

Under the evidence, we submit that Riley had never acquired a homestead interest in the land.    To entitle the head of a family to a homestead exemption, the land must be occupied by him and his family.    The word "householder" in the statute is not to be used in the sense of being the head of a household merely, but in the sense of keeping a house and having a family. *Pearson* v. *Miller*, 71 Miss., 379.

*Jayne & Watson*, for appellees.

A *bona fide* purchaser for value, without notice, takes a good title from a grantee with notice; conversely, a purchaser with notice takes a good title from a grantor without notice.    48 Miss., 494.

The conclusion to be drawn from the decisions in this state

is that the breaking of the chain of notice breaks the effect which such notice has. This is the principle for which we contend. In its support, we cite *Morse* v. *Curtis*, 140 Mass., 112. In *Lawrence* v. *Stratton*, 6 Cush. (Mass.), 163, the rule is put upon the ground that a party with notice cannot take a deed without fraud. The objection is not to the maker of the conveyance, but to the honesty of the taker.

The rule least likely to create confusion of titles is that if a purchaser finds a conveyance from the owner to his grantor which gives him a perfect record title at the time it is recorded, he is entitled to rely upon such record, and is not obliged to search the records afterwards in order to see if there has been a prior unrecorded deed from the original owner. A doubt has been expressed as to the wisdom of having ingrafted any exception to the registration statutes. This was expressed in *Harrington* v. *Allen*, 48 Miss., 492, and the reason for the exception is that fraud cannot be permitted to prevail, as it would if a subsequent purchaser should take and register a deed to defeat the known title of another. If a person purchases from one who bought without notice, he may shelter himself under the first purchaser. If the law were otherwise, notice might be given and a *bona fide* purchaser would be hindered in the sale of the property and compelled to keep it.

We contend that the re-acknowledgment and record of the prior deed to the appellant's grantor operated as constructive notice only from that date, and that it was not constructive notice which would give priority over a purchaser without notice. *Day* v. *Clark*, 25 Vt., 397. The spirit of our registration laws is fully carried out by enforcing the rule declared in Massachusetts and Vermont. The wording of our statute is substantially the same as the statutes in those states. The burden of showing a good title in this case is on complainant, and we insist that he has not done so.

(Counsel also made an argument, citing authorities, to show that Riley and wife were occupying as a homestead the land

claimed by Mrs. L. A. Garnett. But as the decision, as to this, turns entirely upon a question of fact, the argument is omitted.)

COOPER, C. J., delivered the opinion of the court.

The parties to this suit all claim title from one Riley, who, in 1891, was the owner of the land in controversy. On the ninth day of November, A.D. 1891, Riley executed a deed of trust, whereby he conveyed the land to one M. H. Trantham, as trustee, to secure the payment of a promissory note of that date for $3,500, payable to the order of C. H. Pond. This deed contained the usual power of sale if default should be made in the payment of the secured debt at maturity, and also provided that Pond, or the assignee of the note, might at pleasure substitute any other person in lieu of the trustee, Trantham. This deed was acknowledged before Trantham, the trustee, who was a justice of the peace of the county. The certificate stated only that the grantor acknowledged that he had "signed" the deed, omitting the words "and delivered," as required by law. This deed was filed for record in the proper office on the twelfth day of November.

On May 6, 1892, Riley executed a deed of trust to one Oliver, as trustee, to secure the payment of a debt to W. G. Cocke & Co. of $397.22. This deed also contained a power of sale if the debt secured should not be paid at maturity. Before accepting this security, W. D. Lester, a member of the firm of Cocke & Co., examined the records, and there saw and read the prior deed, but was of opinion that, by reason of the defective acknowledgment, and because it had been taken by the trustee therein, it was not entitled to registration, and, being of that opinion, decided to accept the deed to secure his firm.

Some time prior to October, 1892, Pond assigned the note executed by Riley payable to him to the complainant, Chas. R. Woods. About this time it was discovered that the deed of trust by which this note had been secured had not been so ac-

knowledged as to entitle to registration, and thereupon Woods exhibited his bill in equity to enjoin Riley from disposing of the lands to his injury, and an injunction was allowed. The attorney of Woods, being of opinion that a re-execution and acknowledgment of the deed by Riley, and another registration thereof, would serve the same purpose as the injunction, sent the clerk of the chancery court to see Riley and get a re-acknowledgment of the deed, which he did on October 7, 1892, when the deed was on that day again filed for record and recorded on the twenty-fourth.

On November 16, 1892, Riley and his wife conveyed the land to the appellee, Mrs. L. A. Garnett. On November 19, 1892, the land was sold under each of the two deeds of trust, the sales being at different places. At the sale under the deed of trust first made, but junior in record (the Pond deed), the appellant became the purchaser. At the sale under the deed junior in date, but the first recorded, the appellee, Mrs. D. L. Garnett, purchased. The appellant exhibited his bill in this cause to cancel the titles of the defendants, Mrs. D. L. Garnett and Mrs. L. A. Garnett, as clouds upon his own, and to recover possession of the land, they having been let into possession by Riley.

Mrs. D. L. Garnett defends the suit upon the ground that she was a *bona fide* purchaser, without notice of the deed of trust under which complainant claims title. Mrs. L. A. Garnett defends only as to 160 acres of the land, which, she says, was the homestead of Riley at the time he executed the deed of trust to secure the note to Pond, which deed, she contends, was void as to the homestead, because Mrs. Riley did not join her husband in the conveyance, as is required by law for the sale or incumbrance of the homestead. In the controversy between the appellant and Mrs. D. L. Garnett, the question involved is one of law, the facts being undisputed. In the controversy with Mrs. L. A. Garnett, the question is purely of fact, the parties not differing as to the law, which is plain, and not susceptible of controversy.

1. Were Cocke & Co. *bona fide* incumbrancers of the land, without notice of the Pond mortgage? It has been generally held by the American courts, though with some exceptions, that, notwithstanding the registry acts, one who has notice of such facts in reference to an unrecorded conveyance, as devolves on him, as an honest man, the duty of making further inquiry, is to be held as having such knowledge as such inquiry, honestly made, would have disclosed. In those states in which this rule does not apply, it will be found that the registry acts require actual knowledge of the unrecorded conveyance. One who sees upon the record, and reads an instrument improperly recorded, because not acknowledged or proved as required by law, cannot claim to be a *bona fide* purchaser of the property therein described. He knows that what he sees is the copy of an instrument purporting to have been made by the grantor to the grantee. Good faith requires that he shall prosecute further inquiry, and, if he negligently or wilfully neglects so to do, he is to be held to have known all the facts to which that inquiry would have led. The notice to Lester by reading the improperly recorded mortgage, was notice to his firm of the existence of that conveyance, and Cocke & Co. were not *bona fide* purchasers of the property.

2. Where a conveyance is made to one who fails to record his deed until after another has received and recorded a conveyance from the same grantor, but with notice of the first deed, what are the rights of the first grantee against a purchaser from the second, where such purchaser, having no actual knowledge of the facts, buys after the record of the prior deed? This question is determinable by a construction of our registry act, for, at the common law, a second purchaser of the fee could take nothing, since, by the first conveyance, the grantor would have divested himself of all his estate, and would have nothing to convey. *Basset* v. *Nosworthy*, 2 Ldg. Cas. in Eq. and note; Coke on Littleton, 390*d*.

By our registry act it is declared that the instruments thereby

required to be recorded "shall be void as to all creditors and subsequent purchasers for valuable consideration without notice, unless they shall be acknowledged or proved and lodged with the clerk of the chancery court of the county, to be recorded in the same manner that other conveyances are required by this act to be acknowledged or proved and recorded; but the same, as between the parties and their heirs, and as to all subsequent purchasers with notice, or without valuable consideration, shall, nevertheless, be valid and binding." Code 1880, § 1212; Code 1892, § 2457. "Every conveyance, covenant, agreement, bond, mortgage, and deed of trust shall take effect, as to all subsequent purchasers for a valuable consideration without notice, and as to all creditors, only from the time when delivered to the clerk to be recorded." Code 1880, § 1213; Code 1892, § 2458. In Massachusetts and Vermont it is held that a purchaser is not bound to examine the record, after the date of a recorded conveyance, to discover whether the grantor therein has made another conveyance prior in time but junior in record, but may safely purchase from the grantee in the first recorded conveyance, if he, the purchaser, has no actual notice of the prior deed, and no notice of facts which makes it his duty to prosecute inquiry. *Connecticut* v. *Bradish*, 14 Mass., 296; *Trull* v. *Bigelow*, 16 *Ib.*, 406; *Morse* v. *Curtis*, 140 *Ib.*, 112; *Day* v. *Clark*, 25 Vt., 397. And this is said to be the more reasonable rule by the annotators of the leading cases in equity (*LeNeve* v. *LeNeve*, 2 Ldg. Cas., p. 180), and by Mr. Jones (1 Jones on Mortg., § 574). The decided weight of authority is, however, to the contrary, though Mr. Jones cites none of them as supporting the contrary view, except the New York decisions. Among others, the following cases may be noted: *Van Rensselaer* v. *Clark*, 17 Wend. (N. Y.), 25; *Westbrook* v. *Gleason*, 79 N. Y., 23; *Clark* v. *Mackin*, 30 Hun (N. Y.), 411; *Mahoney* v. *Middleton*, 41 Cal., 41; *English* v. *Waples*, 13 Iowa, 57; *Fallass* v. *Pierce*, 30 Wis.,

443; *Erwin* v. *Lewis*, 32 *Ib.*, 276; *Van Aken* v. *Gleason*, 34 Mich., 477; *Bayless* v. *Young*, 51 Ill., 127.

The question has never been decided in this state, though in *Harrington* v. *Allen*, 48 Miss., 492, there is a *dictum* in which Judge Simrall, mistaking the facts of his case, seems to favor the Massachusetts rule. The decisions in Massachusetts and Vermont, while resulting in practically the same end, proceed on irreconcilable and opposite principles. In Massachusetts it is held that the purchaser from the grantee in the deed junior in date, but senior in record, need not examine the records after the date of the registration of the conveyance to his grantor. *Morse* v. *Curtis*, 140 Mass., 112. In Vermont it is held that he is bound by the constructive notice afforded by the registration of the first deed, that it is notice to him of the fact that a deed prior to that of his grantor had been made, but is not notice that his grantor had notice of the first deed; and so the conveyance to the purchaser from the second grantee is preferred in Vermont, not because the purchaser is himself a purchaser without notice, for the registration of the prior deed is notice of its existence, nor because his grantor was a purchaser without notice, for that may or may not be true, but because the purchaser did not know that his grantor was not a *bona fide* purchaser, and thus, under the Vermont decision, one may secure protection as though he were a *bona fide* purchaser when neither he nor any one under and through whom he derives title was in fact such purchaser. This rule has no recognition except in Vermont, so far as we have discovered.

We think the Massachusetts decisions are erroneous, because they hold that one not bound by the registry law is protected by it. But for the registry law, where one has conveyed his legal title, he has nothing left to convey to another, and that other, with or without notice of the prior conveyance, would get nothing, for his grantor had nothing to convey. Now, the statute comes and provides that, though a conveyance of the class named in the statute may be made, it shall as to certain

persons, viz., creditors and purchasers without notice, be valid only from a certain time, viz., the time when it is filed for record.  In other words, the operation of the unrecorded conveyance is suspended until it shall be recorded, as against creditors and purchasers without notice, and, when recorded, it does not operate by relation as against such persons from the day of its execution, but is effective only from and of the date of its delivery for record.  But when filed for record it has full scope and effect against the world.  One who buys after that event can find no protection in the statute, for its terms have been complied with by the holder of the adverse title.)  It is no answer to say that it is inconvenient to the purchaser to examine a long and voluminous record, made after the record of the title of his grantor.  To this the sufficient reply is that, but for the registry acts, he would not have even the protection which such records afford, but would deal at his peril with his grantor, and secure only such title as he might assert.  If that grantor had good title because a purchaser for value without notice, that is a defense to his vendee; but if such grantor was not such purchaser, then the validity of the title he conveys must depend upon the character of his vendee, and if such vendee is not a *bona fide* purchaser under the common law or the statute, we cannot perceive from what source a principle can be deduced which will afford him protection.  It seems clear to us that one who buys an estate cannot invoke the protection of the registry act as against a deed recorded under such act at the time of his purchase.

3. As to the title asserted by the appellee, Mrs. L. A. Garnett, it is sufficient to say that a careful examination of the record satisfies us that no part of the land was the homestead of Riley at the time he executed the deed to secure the debt to Pond.  He had rented land for that year from another and lived on it.  He had a crop thereon and his household effects and family, other than himself and wife, confessedly remained there until after the execution of that deed.  He went on the

land in controversy in August, for the purpose of supervising a logging camp thereon.    It is now attempted to be shown that in October his wife came to live with him there, and that the place thereupon became impressed with the character of a homestead.    It is more than doubtful, we think, whether Mrs. Riley ever was upon the land, except as a visitor at the logging camp, until long after the execution of the mortgage.    She has, we fear, lent herself to the fraudulent scheme of her husband and others to defeat the just claim of the appellant.    The case of the appellees is not such as to commend it to a court.    The record is full of turns and schemes, of devices and pretenses— all tending and manifestly intended to defraud the appellant. The claim that the land was a homestead is, we think, an after-thought, resorted to as a part of the general scheme of fraud.

The decree is reversed, and a decree will be entered here canceling the titles of the appellees as clouds on the title of complainant, and that the complainant be at once placed in possession of the land.    The cause will then be remanded, that an account may be taken of rents and profits and of the injury done by the appellees in cutting timber therefrom, for all of which the chancery court will award complainants a decree.

*Reversed, and decree here.*