# Benjamin Van Aken v. John T. Gleason and others.

*Mortgages: Registry: Notice.*    The purchaser of a mortgage is held bound by such notice as the registry afforded of another mortgage of the same date, but subsequently recorded, of which his vendor had actual knowledge.

*Mortgages: Simultaneous dates: Priority of acknowledgment: Notice.*    Where two mortgages bear even date, it cannot be claimed that the earlier acknowledgment of the one latest recorded would necessarily show it was intended or given as a first security.

*Simultaneous mortgages: Foreclosure by advertisement: Marshalling assets.*    A foreclosure by advertisement of one of two mortgages of even date, and designed to be simultaneous, would not be effectual to settle the relative rights of the foreclosure purchaser and the holder of the other mortgage; and a bill in equity would be necessary to determine such rights and to marshal the assets; and to do this a sale is necessary unless one of the parties shall take up the other's mortgage.

*Equity pleading and practice: Simultaneous mortgages: Foreclosure: Ratable application of proceeds.*    On a bill to determine and protect the rights of complainant under one of two mortgages of even date, which is framed on the theory of priority, but which sets out the facts sufficiently, the

court, having found the two mortgages to be in law simultaneous, under the general prayer granted a decree for a foreclosure and sale, and a ratable application of the proceeds on the two mortgages, in case there should be insufficient to pay both.

*Heard June 15.    Decided October 10.*

Appeal in Chancery from Saginaw Circuit.

*John J. Wheeler,* for complainant.

*Gaylord & Hanchett,* for defendants.

CAMPBELL, J:

The bill in this cause was filed to determine and protect the rights of complainant under a mortgage dated April 7, 1868, made by defendant Emery and one Hart to defendant Gleason, on lot eight and the east half of lots two and three, in block eight, in the village of Chesaning, being property occupied as a hotel.

Some of the testimony is contradictory, and we are obliged to determine as well as we can which to credit.

Before April 7, 1868, Gleason was in possession of this property and of certain adjoining lots, numbers six and seven, and the remainder of two and three. He held a contract from Grasley for the purchase of lots three, six, seven, and eight, for the sum of three thousand five hundred dollars, of which all was paid but one thousand seven hundred and fifty dollars and interest, and this was due one-half the next August (1868), and the balance August 20, 1869. Nothing was in arrears. On the 7th of April, 1868, Hart & Emery purchased of Gleason lot eight and the east half of lots two and three, and it is assumed, although the deeds do not appear in the record, that conveyances were made to them. Although nothing was then due to Grasley, Gleason advanced to him the payment which would become due in the following August, and two mortgages were then made by Hart & Emery for the unpaid purchase money, one to Grasley for the installment due August 28, 1869, for eight hun-

dred and seventy-five dollars, and one to Gleason for eight hundred dollars due in two installments, five hundred dollars and interest April 1, 1870, and three hundred dollars and interest April 1, 1871.

The Grasley mortgage was foreclosed by advertisement in December, 1869, and the property was bid off by Grasley's agent, Mr. Goodell. Just before the redemption ran out, Gleason procured one Kenyon to redeem, and title was made to . Kenyon by Goodell, immediately after the redemption expired, but in pursuance of an agreement made before. A few months thereafter, Gleason procured one Benjamin Hicks to advance to Kenyon the amount of his purchase and a bonus of fifty dollars for his trouble, less three hundred dollars which was allowed by Kenyon as previously due from him to Gleason. Thereupon Kenyon conveyed to Hicks, who gave Gleason a lease for five years, at three hundred dollars a year, of lot seven and the east half of lots two and three. This lease does not include lot eight, and does not account for the three hundred dollars advanced by Gleason towards the purchase money. Mr. Hicks was not sworn as a witness. Gleason claims this three hundred dollars was to apply as the first year's rent.

In March, 1869, Gleason & Emery were keeping the hotel, and complainant held a chattel mortgage on the furniture and personal property. To prevent the foreclosure of this mortgage, Gleason induced complainant to take the real estate mortgage given him by Hart & Emery, which, as we are satisfied from the proofs, was represented to complainant as a first and only mortgage. Complainant, after final default, foreclosed this, and bid it in on the foreclosure, before he obtained any knowledge of the Grasley mortgage.

The Gleason and Grasley mortgages are both dated on the same day. The Grasley mortgage was first acknowledged, and the Gleason mortgage first recorded.

Inasmuch as complainant when he purchased the Gleason mortgage had constructive notice by the record of the Grasley mortgage, of which Gleason was actually informed, we think such notice as the record gave him was binding. It

becomes important, therefore, to know what the record showed, as well as what were the actual facts.

The mortgages bearing even date, and the Gleason mortgage being first recorded, it can hardly be claimed that the earlier acknowledgment of the Grasley mortgage would necessarily show it was intended or given as a first security. It is not necessary, however, to examine into this question, because Mr. Grasley, who is disinterested, swears that there was no agreement concerning a preference, and Gleason's testimony to the contrary does not convince us. He has evidently been scheming to defraud complainant out of his security, and both his conduct and his testimony impress us unfavorably. Both mortgages are purchase-money mortgages, and the Gleason mortgage is for a future installment of his contract with Grasley, which he himself advanced at the time to Grasley, and for which it would not have been unlikely or unreasonable that his mortgage should be put on the same footing with Grasley's. We think, under all the facts in this case, that such is the probable understanding of the parties, fairly to be drawn from the circumstances.

If the mortgages were designed to be, and were made in law simultaneous, then it is manifest that foreclosures by advertisement would not be effectual to settle the relative rights of complainant and the purchasers under the Grasley mortgage, and a bill in equity is necessary to determine them and to marshal the assets. To do this, a sale is necessary, unless one of the parties shall take up the other's mortgage.

Although the bill is framed on the theory of priority, yet it contains enough to authorize the relief under the general prayer. The decree below must be reversed, with costs against Gleason and Hicks, and a decree entered for a foreclosure and sale, and a ratable application of the money on the two mortgages, in case it is not sufficient to pay both. The cause to be remanded to have such decree entered at the circuit.

The other Justices concurred.