HOGAN v. HESTER INVESTMENT CO.

1. MORTGAGES—FORECLOSURE BY ADVERTISEMENT—SIMULTANEOUS
FORECLOSURE OF TWO MORTGAGES—NOTICE OF SALE—IRREGULARITY.
Simultaneous foreclosure by advertisement of two mortgages
simultaneously executed to different mortgagees was fatally
irregular, where the whole property was bid in twice same
day, once in name of each mortgagee; and there was no desig-
nation as to who bought first, nor any indication to prospective
bidder under which sale he would get title, or, if he bought at
one sale, what effect of other sale would be.

2. SAME—REASONABLE CERTAINTY IN FORECLOSURE REQUIRED.
There must be reasonable certainty in foreclosure by advertise-
ment so that there will be no confusion on part of prospec-
tive purchasers, and so that when they bid they may know,
with exercise of ordinary intelligence, what property is offered.

3. SAME—VOID FORECLOSURE—QUITCLAIM DEED—USURY—CONSIDERA-
TION.
Where mortgagor, after void foreclosure, gave quitclaim deed
with option to repurchase within 60 days by paying original
usurious charges and also additional ones, there was no real
consideration for deed.

4. USURY—WAIVER—MORTGAGES—CONSIDERATION—EQUITY.
While usurious charges may be paid or waived, giving mort-
gagor 60 days in which to redeem from void foreclosure upon
paying, not only original usurious charges, but also additional
ones, does not appeal to court of equity as sufficient considera-
tion for waiver.

5. SAME—EQUITY.
Mortgagor, appealing to court of equity for relief from usurious
mortgage, although entitled to relief, is required to do equity.

Appeal from Wayne; Spier (James E.), J.,
presiding. Submitted January 7, 1932. (Docket
No. 71, Calendar No. 36,190.) Decided April 4, 1932.

Bill by Margaret Hogan against Hester Investment Company, a Michigan corporation, and others to declare mortgages usurious, for an accounting, and other relief. Bill dismissed. Plaintiff appeals. Reversed and decree ordered entered in accordance with opinion.

*Fred H. Aldrich,* for plaintiff.

*Frank J. Hester (James A. McKenzie,* of counsel), for defendant Hester Investment Company.

*John A. Hamilton,* for defendants Christa and Frances Hester.

*Elton R. Nellis,* for defendants Hafeli Brothers and Hafeli.

BUTZEL, J. Margaret Hogan, plaintiff, required a mortgage loan of $22,000 on approximately 10 acres of valuable land at the corner of Van Dyke avenue and the Outer Drive, as extended, in Detroit. Her cousin, Robert Dalton, an attorney, offered the loan to Frank J. Hester, also an attorney. The latter represented himself as the loan agent of his mother, Frances Hester, and his sister, Bernadine Christa, but his exact business arrangements with them are not fully disclosed by the record. Although they are also defendants in the instant case, they did not appear as witnesses. Sheets from Hester's books indicate that he kept an account with each of them. He banked their moneys with his own, issued his own personal checks for loans made in their names, handled the loans as if his own, evidently never charged them for his services, and took and kept large bonuses or commissions apparently with their express or implied knowledge and consent. He stated that his method of acting as agent for his

mother and his sister and loaning their funds to borrowers whom he sought was to take out whatever he thought proper for his commissions, and turn the balance over to the borrowers. He admitted that his mother must have known that he was making money in this manner. He conducted all of the negotiations in making the loans in the present litigation, advanced part of his own funds to make them, and not only took a large bonus, but exacted an additional 10 per cent. for himself for each 12 months or fraction thereof that might intervene between the dates of the maturity of the loan and the time of its subsequent payment. He seems to have had continuous and full charge of the entire transaction from its inception, and even after attempted foreclosure, a corporation that he dominated and in which he, his wife, and his secretary owned all of the stock claimed title to the property. In order to obtain the loan of $22,000 plaintiff executed two mortgages of $12,500 each on November 19, 1926, one running to Mrs. Hester and the other to Mrs. Christa, and each payable within a year. They were regarded as having been simultaneously executed. The $3,000 difference between the aggregate of the loans and the $22,000 was kept by Hester as a commission. He also deducted further amounts for mortgage taxes and recording fees. He paid $500 of the commission to Dalton for bringing him the business. Dalton claims that plaintiff knew he received this fee. The mother and sister were each charged with $12,500 on Hester's books. Debit balances of over $4,900 against the mother and of over $6,700 against the sister were created on Hester's books, so that it would appear that he furnished a large part of the money himself, but it was repaid to him shortly thereafter.

Payments of neither principal nor interest were made by plaintiff on the mortgages. She claims that this was due to the fact that she could not secure releases of lots that she was able to sell and through the proceeds of which sales she expected to make payments. Foreclosure proceedings by advertisement of each mortgage were simultaneously instituted, and the entire property was bid in on the same day, once in the name of the mother, and again in the name of the sister, each time for $12,500, plus interest, etc. There was no designation as to who bought the property first, nor was there any way of indicating to a prospective bidder under which sale he would get title, or, if he bought at one sale, what the effect of the other one would be. During the year of redemption, plaintiff made unsuccessful attempts to refinance. She claims that Hester encouraged her to believe that he would make her a new loan, and discouraged her from dealing with others. As the expiration of the time to redeem approached, plaintiff asserted that the foreclosure proceedings were void because the advertisements showed an amount due far in excess of what she legally owed, and because the foreclosure proceedings should have been brought in equity and not by advertisement, so that prospective bidders would know what interest they were getting at the sale.

Condemnation proceedings for street opening purposes had been begun and an award of approximately $12,741.96 was made for two acres or thereabouts. Plaintiff was dissatisfied with the award, and took steps to appeal.

Shortly prior to the expiration of the time to redeem, plaintiff with her attorney met Hester, who was an officer of the Hester Investment Company, a corporation with a capital of $50,000, of which

Hester owned over $47,000 worth of stock, his wife
$2,000, and his secretary the remaining shares.
There seems little doubt but that Hester was in full
control of the Hester Investment Company, which
had full knowledge of plaintiff's rights and claims.
In accordance with an agreement made by plaintiff
and her attorney with Hester representing the
Hester Investment Company, plaintiff gave the lat-
ter a quitclaim deed of the premises, and the Hester
Investment Company, though not yet the owner of
the property, gave her a 60-day option to repurchase
the property for the amounts bid at the foreclosure
sale, plus interest from that date, and in addition
thereto the extra 10 per cent. per year from the date
the mortgage became due until the end of the 60-day
option period, in accordance with the contem-
poraneous agreement plaintiff had made with
Hester.  The agreement further stated that in the
event plaintiff should avail herself of the option, she
would be entitled to a quitclaim deed of the premises,
and an assignment of the condemnation award.  In
order to determine the amounts paid by her, a mem-
orandum of charges was drawn up, reading as fol-
lows:

"Amount of bids $27,541.86.  Interest on same
May 15, 1928, to July 25, 1929, $2,302.79.  *Renewal*
on $25,000, November 19, 1927, to July 25, 1929,
$2,104.95.  Total $31,951.60."

Plaintiff claims that she thought that the option
agreement operated as a renewal of the mortgages
from the date of the foreclosures, and that she could
not be divested of her rights in the property with-
out foreclosure.  Dalton claims he permitted plain-
tiff to give a deed and enter into the option agree-
ment because the legal effect would be to re-establish

plaintiff's rights as mortgagor. After the option expired, quitclaims for the property to the Hester Investment Company from the mother and sister were recorded. The one from the mother is dated subsequently to the time the option expired. After the option period expired, Hester Investment Company also sold the property on executory contract to Hafeli Brothers, a Michigan corporation, for $40,000, with a down payment of $5,000. It also collected $12,741.96 from the condemnation award. Plaintiff, having failed to avail herself of the option within the 60 days, brought the instant suit against Hester Investment Company, Frank J. Hester, Frances Hester, Bernadine Christa, Hafeli Brothers, a Michigan corporation, Joseph Hafeli, Raymond Hafeli, and Carl Paulson. The latter took a deed from Frances Hester but quitclaimed the same to the Hester Investment Company, and disclaims all interest in the property. The interests of Joseph Hafeli and Raymond Hafeli may be considered with those of Hafeli Brothers, a corporation.

Plaintiff seeks to have the mortgages declared usurious, the foreclosure proceedings set aside, and, in order to redeem, a determination of the correct amount still due on the mortgages after the application of the condemnation award received by the Hester Investment Company and the proper deductions made on account of the usurious amounts exacted from her. She also seeks to have the Hafeli Brothers' contract set aside. We believe that the case is very similar to and controlled by *Freedman* v. *Katz*, 246 Mich. 297, 298, where Mr. Justice FEAD, speaking for the court, said:

"The relationship between Alpert and Mrs. Katz contained possibilities of a *bona fide* brokerage connection, an agency, or a subterfuge. The oral tes-

timony of defendants that the transaction was a
brokerage was seriously impeached by the fact that,
if true, they could have proved it by the written
evidence of their correspondence, submitting and
accepting the loan, and production of Mrs. Katz's
check, forwarding the money to Alpert, and they
failed to do so. * * * Alpert spoke with authority
in making and handling the loan, passed upon the
security and title, drafted and recorded the mort-
gage, gave his personal check to the mortgagor,
made demand for payment, offered to renew for a
year on payment of another $450, conducted the
foreclosure proceedings, signed Mrs. Katz's answer
in this suit as her attorney in fact, and had been
making loans for her. The testimony fairly pre-
ponderates that if Alpert was not the real lender,
he was general loan agent for his sister and had her
money on hand to loan. *Matteson* v. *Blackmer,* 46
Mich. 393.

"The great weight of authority is that a loan is
not rendered usurious by the lender's agent charg-
ing the borrower, for his own benefit, a commission
or bonus for procuring the loan, in excess of the
maximum legal rate of interest, where such charge
is made without the lender's knowledge or consent,
either expressed or implied, and is not ratified or
shared by him. 21 A. L. R. 841, note. However,
such knowledge and consent may be implied from
circumstances. While not conclusive, circumstances
held to be of weight, both of which are present at
bar, are blood relationship between the lender and
agent (*Franzen* v. *Hammond,* 136 Wis. 239 [116
N. W. 169, 19 L. R. A. (N. S.) 399, 128 Am. St. Rep.
1079]; *Rogers* v. *Buckingham,* 33 Conn. 81); and
the fact that the lender paid the agent no compensa-
tion for his services (21 A. L. R. 860)."

See, also, *Umphrey* v. *Auyer,* 208 Mich. 276.

We believe the foreclosure sales were so irregular
that they must be set aside. There was no way that

a prospective purchaser could determine what, if any, title he would receive by bidding at either sale. As was stated in *Grover* v. *Fox,* 36 Mich. 461:

"Parties are entitled to have the papers on file (foreclosure proceedings) of themselves identify the sale and convey distinct information, without the aid of extrinsic inquiries, as to the time and manner of the sale and the price or prices bid." (Syllabus.)

In *Van Aken* v. *Gleason,* 34 Mich. 477, we held:

"A foreclosure by advertisement of one of two mortgages of even date, and designed to be simultaneous, would not be effectual to settle the relative rights of the foreclosure purchaser and the holder of the other mortgage; and a bill in equity would be necessary to determine such rights and to marshal the assets; and to do this a sale is necessary unless one of the parties shall take up the other's mortgage." (Syllabus.)

There must be reasonable certainty in a foreclosure by advertisement so that there will be no confusion on the part of the prospective purchasers, and so that when they bid, they may know, with the exercise of ordinary intelligence, what property is offered. *Welch* v. *Byerly,* 150 Md. 107, 112 (132 Atl. 616); *Nichols* v. *Nichols,* 192 Ala. 206 (68 South. 186); *Clark* v. *Duvall,* 61 Colo. 76 (156 Pac. 144); *Schoch* v. *Birdsall,* 48 Minn. 441 (51 N. W. 382).

The foreclosure advertisement called for excessive amounts. While it is true, as defendants contend, that the defense of usury may be waived, we do not believe that there was such a waiver in the present case. There is much force in plaintiff's claim that the giving of the deed with the option back was considered a renewal of the loan, as designated by Hester in the memorandum of charges.

We believe there was no real consideration for the deed. Usury may be paid or waived, but giving the mortgagor 60 days in which to redeem from a void foreclosure upon her paying not only the original usurious charges, but also additional ones, does not appeal to a court of equity as a sufficient consideration for a waiver. As was stated in *Gardner* v. *Matteson,* 38 Mich. 200, 204:

"The defense of usury is a personal one, and may be waived, and so may the party voluntarily pay usurious interest, and where he does so he will not be permitted to recover it back. To this extent the statute undoubtedly goes, but it never was intended that by substituting new paper, with usury added, for the old paper as the same became due, the question of usury could not thereafter be raised."

Plaintiff is entitled to relief. She should be charged with the original $22,000 loan; she should also be charged with interest at the rate of 5 per cent. per annum from the time the loan was made up to and including the date of the decree. She has asked the aid of a court of equity and must be prepared to do equity. *Stiglitz* v. *Weinstein,* 227 Mich. 691; *Dalton* v. *Weber,* 203 Mich. 455; *Vandervelde* v. *Wilson,* 176 Mich. 185; *People, ex rel. Attorney General,* v. *Detroit Mortgage Corp.,* 239 Mich. 495. She should be further charged with all taxes, assessments, or other legal charges upon the property that she should have paid and that were paid by the Hester Investment Company, Hester, or anyone else in her behalf. She should be credited with the amount collected for the condemnation award and with the $5,000, and any other moneys paid by Hafeli Bros., a corporation, to the Hester Investment Company on the executory contract to purchase the

property; she should be credited with interest at the rate of 5 per cent. per annum from the time of such payments. The balance shall be the amount found due from plaintiff to Hester Investment Company and for which it shall have a first lien on the property, but subject to the vendee's rights under the Hafeli Brothers' contract. Plaintiff shall pay such balance within 30 days from the time of entering the decree, together with interest from the date of entry of the decree, at the rate of 5 per cent. per annum. Upon her paying the amount, she shall be entitled to a deed to the premises and an assignment of the Hafeli Brothers' contract, and the deed shall operate as a full discharge of both mortgages. The Hester Investment Company shall be deemed the equitable assignee of the two mortgages. Further foreclosure proceedings, if necessary, shall recognize the rights of Hafeli Brothers under the land contract and the purchaser under foreclosure sale shall be entitled to an assignment of the vendor's interest under such contract, provided that it is still in existence at the time of foreclosure sale. If it shall become necessary, a receiver may be applied for to protect the rights of the respective parties under the Hafeli Brothers' contract. Plaintiff is guilty of such laches that she cannot complain of the contract with Hafeli Brothers, a corporation, which is found to be a *bona fide* contract purchaser. If parties cannot agree upon the amounts respectively due, the case will be remanded for an accounting. Plaintiff shall be entitled to the costs, but they shall be paid by crediting her with the amount thereof on the balance due on the mortgages. Plaintiff may have decree accordingly.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.