**In re FIRST MORTGAGE FUND, INC., Debtor.**

No. 12–14733.

United States District Court, E.D. Michigan, Southern Division.

Aug. 30, 2013.

Jeffrey H. Bigelman, William C. Blasses, Osipov Bigelman, P.C., Louis P. Rochkind, Paul R. Hage, Jaffe, Raitt, Southfield, MI, for Appellant.

Mark H. Shapiro, Steinberg, Shapiro, Tracy M. Clark, Steinberg Shapiro & Clark, Southfield, MI, for Appellee.

## ORDER AFFIRMING DECISION OF BANKRUPTCY COURT

STEPHEN J. MURPHY, III, District Judge.

The matter before the Court is an appeal by Stavenkan Fund, Inc. ("Stavenkan") from an order of the bankruptcy court in favor of the Chapter 7 trustee. For the following reasons, the Court will affirm the decision of the bankruptcy court.

## BACKGROUND

The present dispute arises from Stavenkan's assertion of interest in four parcels of property located in Flint, Michigan (the "Flint properties") to which the Debtor, First Mortgage Fund, Inc. ("First Mortgage") holds record title. The relevant facts are undisputed.

On February 24, 2005, Samuel A. Ragone purchased the Flint properties. Halls Mortgage, Inc. ("Halls") financed the purchase. Ragone executed a balloon note ("Note") in the sum of $1,531,000 in favor of Halls, and the note was secured by mortgages on the properties. Halls assigned the note and the mortgages to First Mortgage. The mortgages and the assignments were recorded with the Genesee Country Register of Deeds.

On May 23, 2005, First Mortgage assigned its entire interest in the note and mortgages to Stavenkan. It is undisputed that the assignment from First Mortgage to Stavenkan was never recorded. Accordingly, First Mortgage remained the mortgagee of record and no recorded evidence of Stavenkan's interest in the properties existed.

Approximately three years later, First Mortgage, as mortgagee of record, foreclosed on the Flint properties, and then purchased the properties in a credit bid at the foreclosure sale. On March 5, 2008,

the sheriff deeds for the properties were recorded with the Genesee County Register of Deeds in favor of First Mortgage.

After another three years, in March 2011, First Mortgage filed for bankruptcy. After First Mortgage filed for bankruptcy, Stavenkan—whose owner and operator Michael Stacey was also the majority shareholder and president of First Mortgage—for the first time sought to assert its interest in the properties by filing a motion to lift the bankruptcy stay. On June 26, 2012, the Trustee filed an adversary action, seeking to avoid the transfer of First Mortgage's interest in the properties pursuant to 11 U.S.C. § 544(a). *See* Adversary Compl. to Avoid Transfers, ECF No. 2 at 6. On July 10, 2012, Stavenkan filed a counter complaint, raising claims for (1) quiet title; (2) specific performance; and (3) constructive trust. The trustee and Stavenkan filed cross motions for judgment. *See* Trustee's Mot. for Summ. J., ECF No. 2. at 93; Stavenkan's Mot. for Summ. J., ECF No. 2 at 181. On September 11, 2012, the bankruptcy court held a hearing on the motions and issued an order on the record granting the trustee's motion and denying Stavenkan's. *See* Hr'g Tr., ECF No. 2 at 283–292; Order, ECF No. 2 at 263. Stavenkan appeals that order.

## DISCUSSION

■ This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a). The Court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *AMC Mortg. Co. v. Tenn. Dep't of Revenue (In re AMC Mortg. Co.)*, 213 F.3d 917, 920 (6th Cir. 2000).

■ Section 544(a), known as the Bankruptcy Code's "strong arm" provision, allows the bankruptcy trustee "the power to avoid transfers of property that would be avoidable by certain hypothetical parties." *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1023 (6th Cir.2001). Here, the trustee asserts the rights of a bona fide purchaser under § 544(a)(3). Under that provision, the trustee may avoid the transfer of any property of the debtor's that would be voidable by "a bona fide purchaser of real property ... from the debtor ... that obtains the status of a bona fide purchaser at the time of the commencement of the case...." 11 U.S.C. § 544(a)(3). In other words, the provision "assumes a transfer from the debtor to a bona fide purchaser on the date of filing. The trustee is then clothed with whatever legal rights the bona fide purchaser would possess." *Geygan v. World Sav. Bank, FSB (In re Nolan)*, 383 B.R. 391, 397 (6th Cir. BAP 2008). The law of the state in which the property is located determines the scope of the trustee's rights as a bona fide purchaser. *Owen–Ames–Kimball Co. v. Mich. Lithographing Co. (In re Mich. Lithographing Co.)*, 997 F.2d 1158, 1159 (6th Cir.1993) ("State law governs who may be a bona fide purchaser."), *aff'd*, 250 F.3d 1020 (6th Cir.2001). In Michigan, a bona fide purchaser for value takes free of prior unrecorded interests. Mich. Comp. Laws § 565.29. Here, the trustee argues, and the bankruptcy court found, that occupying the legal status of bona fide purchaser for value, the trustee took the four Flint properties free of Stavenkan's interest in the properties because Stavenkan's interest was unrecorded.

Stavenkan makes several interrelated arguments in response. First, Stavenkan argues that the foreclosure was void because First Mortgage foreclosed despite having already assigned its interest to Stavenkan. Consequently, Stavenkan argues, First Mortgage did not take valid title to the properties at that time, and the only

way it could gain valid title under Michigan law would be to take adverse possession of it under Mich. Comp. Laws § 600.5801(1), which provides a five-year statute of limitations to challenge a claim of title through foreclosure sale. First Mortgage has not taken, and cannot take, through adverse possession, Stavenkan argues, because Stavenkan filed this action within the five-year statutory period. But this argument fails because Stavenkan's unrecorded interest does not render the foreclosure void.

■ Under Michigan law, a party is entitled to foreclose by advertisement if it can show record chain of title, i.e., a clear chain of title from the original mortgagee to the foreclosing party. Mich. Comp. Laws § 600.3204(3) ("If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale ... evidencing the assignment of the mortgage to the party foreclosing the mortgage."); *see also Livonia Properties Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC*, 399 Fed.Appx. 97, 100 (6th Cir.2010) (rejecting plaintiff's assertion that "a Michigan mortgage may only be foreclosed by advertisement if every interim assignment between the original lender and the foreclosing party is revealed by the public record"); *Arnold v. DMR Financial Services, Inc.*, 448 Mich. 671, 671, 532 N.W.2d 852 (1995) ("[T]he recordholder of the mortgage [can] foreclose by advertisement, and [the] mortgage is not affected by the fact that others had an unrecorded interest in the mortgage."). As the record holder of the mortgage at the time of the foreclosure, First

Mortgage met the requirements of Mich. Comp. Laws § 600.3204(3), despite Stavenkan's unrecorded, and unasserted, interest.

■ Moreover, the existence of Stavenkan's unrecorded interest does not, as Stavenkan argues, render the foreclosure void *ab initio*. It renders it *voidable*.[1] Stavenkan cites *Davenport v. HSBC Bank USA*, 275 Mich.App. 344, 739 N.W.2d 383 (2007) to support its argument that the foreclosure is void *ab initio*, but *Davenport* is no longer good law. As described by the Michigan Supreme Court when overruling the decision, *Davenport* "held that the defendant's failure to comply with MCL 600.3204(1)(d), which requires that a party own some or all of the indebtedness before foreclosing by advertisement, rendered the foreclosure proceedings void *ab initio*." *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 114, 825 N.W.2d 329 (2012) *reh'g denied*, 493 Mich. 962, 828 N.W.2d 678 (2013). The *Kim* court rejected that holding, and stated that, "*Davenport*'s holding was contrary to the established precedent of this Court. We have long held that defective mortgage foreclosures are *voidable*." *Kim*, 493 Mich. at 114, 825 N.W.2d 329 (emphasis added); *see also Spadafore v. Aurora Loan Servs., LLC*, No. 12–10532, 2013 WL 2156047 (E.D.Mich. May 17, 2013) ("*Kim* makes clear that, under Michigan law, 'failure to comply with the conditions set forth in Michigan's foreclosure-by-advertisement statute does not render flawed foreclosures void (i.e., void *ab initio* ) but merely voidable.'") (quoting *Conlin v. Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 361 (6th Cir. 2013)).[2] Accordingly, at the time it oc-

---

1. A mortgage that is "voidable" is "valid until annulled," while a mortgage that is "void ab initio" is "null from the beginning." *Black's Law Dictionary* 1604–05 (8th ed. 2004).

2. Stavenkan argues that *Kim* did not overrule *Davenport,* rather it "appears to have been making a distinction between substantively defective foreclosures and procedurally defective foreclosures." *See* Stavenkan's Br. 10

curred, and absent any challenge from Stavenkan, the foreclosure was valid. Because Stavenkan had not asserted its interest before First Mortgage filed for bankruptcy, First Mortgage had valid, record title to the properties at the time the petition was filed.

■ To the extent that Stavenkan seeks to invalidate the foreclosure in this proceeding, the attempt cannot succeed.[3] In Michigan, "because the foreclosure statutes are intended to create finality and certainty in property rights, an action challenging foreclosure must be brought 'promptly and without delay.' " *El–Seblani v. IndyMac Mortgage Servs.*, 510 Fed. Appx. 425, 429 (6th Cir.2013) (quoting *Richard v. Schneiderman & Sherman, PC*, 294 Mich.App. 37, 818 N.W.2d 334 (2011), *rev'd on other grounds*, — Mich. —, 807 N.W.2d 325 (2012)); *see also United States v. Garno*, 974 F.Supp. 628, 633 (E.D.Mich.1997) ("Michigan courts agree that disgruntled mortgagors must act promptly and without delay, having estopped attacks on foreclosure sales due to irregularities in the sale which were brought only two years or even less after a sale."). Stavenkan did not act "promptly and without delay" to protect its interests. It filed this challenge three years after the foreclosure, and after almost six years of failing to ensure that its interest was recorded. Stavenkan offers no reason for the delay, and, given that Stavenkan's owner and operator Michael Stacey was also the majority shareholder and president of First Mortgage, it seems likely that Stavenkan at least had notice of First Mortgage's actions. Regardless, under Michigan law, three years is too long to wait. *See White v. Burkhardt*, 338 Mich. 235, 239, 60 N.W.2d 925 (1953) (concluding that a claim was too late when the redemption period had expired before the filing of the complaint); *Fox v. Jacobs*, 289 Mich. 619, 625, 286 N.W. 854 (1939) (concluding that a challenge brought twenty months after the foreclosure sale was brought too late).

■ In addition, as noted above, pursuant to § 544(a)(3), the trustee occupies the status of a bona fide purchaser for value. Under Michigan law, the validity of a foreclosure by advertisement may not be challenged after the property is sold to a bona fide purchaser. *Hogan v. Hester Investment Co.*, 257 Mich. 627, 241 N.W. 881 (1932).

Stavenkan next argues that, even if the foreclosure sale was valid, it is entitled to the properties pursuant to the equitable remedies of quiet title, specific performance, or a constructive trust. The Court first notes that the equities do not weigh in

---

(citing *Mitan v. Fed. Home Loan Mortg. Corp.*, 703 F.3d 949 (6th Cir.2012)). But the Michigan Supreme Court rejected that distinction, and abrogated the Sixth Circuit's holding in *Mitan* and related cases relying on the distinction, when it overruled *Davenport* in *Kim*. See *Acheampong v. Bank of New York Mellon*, No. 12–13223, 2013 WL 173472 (E.D.Mich. Jan. 16, 2013) ("Because *Mitan* relied solely on *Davenport* for its position that a structural defect in foreclosure proceedings voids the foreclosure, *Mitan* is no longer good law for that point.").

3. The bankruptcy court held that it could not reach Stavenkan's challenge to the foreclosure's validity because it was required to give full faith and credit to "valid foreclosures entered in another forum." Order, ECF No. 2 at 290. The Court agrees with Stavenkan that the Full Faith and Credit clause does not prevent the bankruptcy court's consideration of Stavenkan's challenge to the foreclosure. *See, e.g., In re Miller*, 442 B.R. 621, 636 (Bankr.W.D.Mich.2011) *aff'd*, 459 B.R. 657 (6th Cir. BAP 2011) *aff'd*, 513 Fed.Appx. 566 (6th Cir.2013) (addressing a challenge to a foreclosure sale in a core proceeding under 28 U.S.C. § 157(b)). The bankruptcy court, however, also addressed the arguments on the merits. *See* Order, ECF No. 2 at 290–91. This order affirms those findings.

Stavenkan's favor, if for no other reason than it slept on its rights for six years — from the time it failed to ensure its interest was recorded — prior to bringing its claim. *See Knight v. Northpointe Bank,* 300 Mich.App. 109, 116, 832 N.W.2d 439 (2013) (finding that trial court did not err in applying doctrine of laches to quiet-title claim when plaintiff "did not assert her rights when her sister took possession of the property, did not assert her rights when her sister mortgaged the property and transferred it to her trust, and did not assert her rights when her niece transferred the property into her own name.").

■ Moreover, the trustee's status as a bona fide purchaser of the properties extinguishes Stavenkan's equitable claims. As stated above, § 544(a)(3) gives the trustee the legal rights of bona fide purchaser under state law. Under Michigan law, a bona fide purchaser would take free of Stavenkan's equitable claims. *See Missouri v. MWG Prop. Consultants, L.L.C.,* No. 273906, 2008 WL 2389489 (Mich.Ct. App. June 12, 2008) ("If an interest conveyed by a deed passes to a bona fide purchaser for value, the interest is no longer voidable."); *Nichols v. Martin,* 277 Mich. 305, 312, 269 N.W. 183 (1936) ("[E]quity will impress a constructive trust on real property ... *where there are no intervening rights of bona fide purchasers."*) (emphasis added); *Mowat v. Walsh,* 236 Mich. 391, 393, 210 N.W. 233 (1926) (declining to award specific performance where the "[r]ights of good faith purchasers came in during the long interval between the forfeiture and the filing of the bill").

■ Stavenkan argues that the trustee cannot take as a bona fide purchaser because First Mortgage obtained its interest fraudulently by foreclosing on the properties despite having assigned its interest to Stavenkan. But the cases cited by Stavenkan to support the claim hold only that a bona fide purchaser cannot claim title when a party in the chain of title received a *forged* deed, or a deed signed as a result of "constructive forgery." *See* Stavenkan's Br. 14 (citing, e.g., *Austin v. Dean,* 40 Mich. 386 (1879) ("There can be no such thing as a bona fide holder under a forgery, whose good faith gives him any rights against the party whose name has been forged or his heirs."); *Horvath v. Nat'l Mortgage Co.,* 238 Mich. 354, 360, 213 N.W. 202 (1927) (applying *Austin* to cases of constructive fraud, i.e. when the signature conveying an interest in property was procured as a result of fraud and without knowledge of the conveyance)). Whether or not First Mortgage acted fraudulently when it foreclosed on the properties after having assigned its interest to Stavenkan, it did not commit forgery or constructive forgery. Michigan law does not treat *all* fraud as constructive forgery. *See Leidel v. Ballbach,* 345 Mich. 201, 206, 75 N.W.2d 860 (1956) ("The plaintiffs' testimony does not make a case of constructive forgery. They signed the papers willingly, with full knowledge that they were passing their interest in the property to De Magnussun....Their unfortunate situation is due solely to the fact that De Magnussun was a swindler and did not fulfill his promise to pay.") (citation omitted). And Stavenkan does not cite any authority extending the forgery exception to a bona fide purchaser's rights to other types of fraud.[4] Accordingly, the

4. Stavenkan cites *Bankers' Trust Co. v. Weber,* 244 Mich. 697, 222 N.W. 81 (1928), and argues it illustrates that "Michigan Courts have also not given superior rights to bona fide purchases when a party in the chain of title was fraudulently conveyed real estate that did not belong to the seller." *Id.* But as the trustee points out, in that case, the court held

Court finds that as a hypothetical bona fide purchaser, the trustee's rights supersede Stavenkan's equitable claims.

 Finally, Stavenkan argues that by virtue of the unrecorded assignments, it at least holds the note, and that because under Michigan law the mortgagee holds the mortgages only as security for payment of the note, the Court should compel conveyance of the mortgages to Stavenkan. The Court agrees with the bankruptcy court's determination that Stavenkan's argument that it has a right to payment on the note is properly resolved in the claims process and does not affect the trustee's ability to avoid the transfer of First Mortgage's interest prior to the foreclosure. *See* Order, ECF No. 2 at 292 ("[T]hat's an issue between Stavenkan and First Mortgage as to whether there was some sort of credit properly exchanged. That has nothing to do with the trustee's ability to avoid an unrecorded interest.").

For the foregoing reasons, the Court will affirm the decision of the bankruptcy court. The Trustee, as a hypothetical bona fide purchaser under 11 U.S.C. § 544(a)(3), may avoid Stavenkan's unrecorded interest in the Flint properties.

### ORDER

**WHEREFORE** it is hereby **ORDERED** that the decision of the bankruptcy court is **AFFIRMED.**

**SO ORDERED.**

---

that the plaintiff was *not* a bona fide purchaser of the mortgage. *Bankers' Trust,* 244 Mich. at 700, 222 N.W. 81 ("The Bankers' Trust Company is not a bona fide purchaser of the mortgage in question."). It did not hold that Bankers' Trust was a bona fide purchaser, but that its rights were extinguished because of a fraudulent conveyance of property.