MELCONIAN v. FRAAM.

1. ACCOUNTING—BURDEN OF PROOF.

Plaintiff in suit for accounting of taxicab business in which he was ostensible owner and defendant managed finances *held*, not to have sustained the burden of proof either as to the right to an accounting or the amount thereof.

2. SAME—EVIDENCE—SUFFICIENCY.

Evidence *held*, insufficient to sustain decree for defendant as to item of $6,000 note in accounting between parties operating and financing a taxicab business.

Appeal from Kent; Perkins (Willis B.), J. Submitted October 11, 1933. (Docket No. 47, Calendar No. 37,366.) Decided December 19, 1933.

Assumpsit by George Fraam against Harry Melconian on a promissory note. Bill by Harry Melconian against George Fraam for an accounting and

other relief. Former case transferred to equity side of court and cases consolidated. Decree for defendant. Plaintiff appeals. Modified and affirmed.

*Dunham & Sherk,* for plaintiff.

*Linsey, Shivel & Phelps,* for defendant.

FEAD, J. The suit is for an accounting. Defendant had decree for $9,753.48.

In 1919, with one car, plaintiff engaged in the taxicab business in Grand Rapids under the name of "Harry's Taxi." Near the Union Depot, defendant conducted a small restaurant, which became a sort of headquarters for taxi drivers.

The acquaintance between these parties began about 1921 and developed into a fine friendship, characterized by personal affection and implicit trust. Melconian boarded at the restaurant. Fraam acted as his banker, keeping his taxicab collections in his safe and paying bills for him. Also, he became surety on Melconian's $10,000 public liability bond, indorsed his notes for purchase price of cars, and the like. In the succeeding years Fraam provided an apartment in one of his houses, which he declared was Melconian's home for life, without rent, and made provision for him in his will. Melconian relied on Fraam's advice and executed without question any instrument Fraam directed.

In 1924, one Shay purchased an interest in Harry's Taxi, but he withdrew in July, 1925. In the course of the next year defendant paid Shay $1,415 to cover wages and repurchase price and claimed he thereby bought Shay's interest. Plaintiff claims Shay merely withdrew and defendant paid him out of Melconian's money.

About that time plaintiff had some personal injury claims pending against him on account of accidents

with his cabs.  Fraam claims that in December,
1925, he purchased Melconian's remaining interest
in the business for $1,500.  He said he bought the
business because he was liable on the personal in-
jury claims and had advanced and was obligated for
considerable sums, but that the business was con-
tinued in the name of Melconian, principally to en-
able Fraam to continue as surety on the public lia-
bility bond.

Until it was sold in 1929, the business was con-
ducted in Melconian's name.  October 28, 1925, Mel-
conian executed to Fraam a note and chattel mort-
gage for $6,000, in the consideration for which were
included $1,415 for the Shay repurchase and various
advances.  On March 19, 1926, Melconian executed
to Fraam another note and chattel mortgage for
$10,000, which included advances to buy cars and
sums paid to settle the damage suits.  Plaintiff was
listed as proprietor of the business in the city di-
rectory, telephone books, etc.  All public licenses,
permits and certificates of title to cars ran to him and
most or all contracts of sale were taken in his name.
On April 26, 1929, an assumed-name certificate,
drafted by Fraam's attorney, was filed declaring
that the business was owned and operated by Mel-
conian.

Fraam was in full charge of the financial affairs
of the business.  Melconian managed the operation
of the cabs.  The issue of ownership did not arise
between them.  Neither seems to have claimed nor
exercised superior control and their conduct of the
business resembled that of a partnership, each in
full charge of a department.  However, neither
claims there was a partnership.

In the summer of 1929, Fraam conducted negotia-
tions for sale of the business to the Grand Rapids
Railway Company for $30,000, of which about

$15,000 represented good will. Included in the sale, at an additional $5,000, was the Bird Taxi Company, which Fraam purchased September 3, 1929, for $4,950. Fraam had the bill of sale of Bird Taxi Company run to plaintiff and plaintiff executed to Fraam an option to purchase. On the same day Melconian executed to Fraam a bill of sale of Harry's Taxi for the nominal consideration of $1.

' The sale to the railway company was consummated October 15, 1929. On that date Melconian executed to Fraam a bill of sale of the Bird Taxi Company for the expressed consideration of $2,000, which defendant afterwards paid plaintiff and which Fraam says was a gratuity. The instrument contained the following:

"I do hereby acknowledge settlement in full for all claims of whatsoever nature I have or might have against George Fraam, arising out of our business dealings prior to the date hereof and up to and including this 15th day of October, 1929."

After the sale of Harry's Taxi, plaintiff purchased a half interest in the Oakwood Livery Company. September 25, 1930, he purchased the other half. In connection with the transaction a statement was prepared showing Melconian's total investment as $5,750.66. Plaintiff claimed the statement was prepared for its effect in inducing the owner of the outstanding half interest to reduce his price. It appears certain that some of the items were padded and others were false. Fraam claims the statement showed the amount Fraam had advanced to Melconian in that business. To further prove the amount, Fraam produced a note for $6,000, executed by Melconian, but it developed at the hearing that it was the $6,000 note given in 1925, with the year changed, evidently by Fraam.

After selling Harry's Taxi, Fraam purchased a Rent-A-Car business in plaintiff's name, and so conducted it until December 2, 1930, when he sold it to plaintiff for $6,000, payable $2,000 per year, evidenced by a note. No payments having been made on the note, negotiations for adjustment were had in the spring of 1932, in which each party was represented by counsel of his own choice. Mr. Bowman represented plaintiff. The business was turned back to defendant, the $6,000 note was returned to plaintiff and, on April 27, 1932, as a result of the negotiations, he executed to defendant a $3,000 note, upon which he afterwards paid $200. During the negotiations Mr. Bowman raised the question that plaintiff was entitled to an accounting from Harry's Taxi business. The instruments of 1929 were shown him, he discussed the matter with Melconian, Melconian made no claim of right to an accounting, and the matter was not discussed further in the negotiations for settlement of the Rent-A-Car business.

Fraam commenced suit at law on the $6,000 note in July, 1932. This bill was filed August 15, 1932. The court gave defendant a decree in the amount of $3,000 and $6,000 notes.

The case presents difficulties. The ownership of Harry's Taxi from 1925 to 1929 is not free from doubt. Ostensibly, Melconian was the owner but Fraam was in complete control of the finances. Their mode of operation pointed out neither as having nor claiming superior rights. The uncertainty sends us to subsequent events for light on the issue.

Special force attaches to the settlement of the Rent-A-Car business in April, 1932. The parties then were dealing at arm's length. Each was represented by counsel. Shortly before, the break in their friendship had occurred. In March, Fraam had written a letter to Melconian stating, in substance, that

his love for him had turned to hate and that their subsequent relations would be on a business basis— each to pay for what he got from the other. Fraam demanded a settlement of the Rent-A-Car transaction and told Melconian to get a lawyer.

When Melconian executed the bill of sale and receipt in 1929, he was fully conscious of their effect. It is claimed he said at the time that Fraam owned the business, he, Melconian, had no interest in it and he appreciated the gratuity of $2,000. However that may be (see *In re Lewandowski's Estate,* 236 Mich. 136), he made no claim that Fraam owed him anything until the suit on the $6,000 note was commenced in July, 1932. Melconian said he never would have claimed an accounting had Fraam not brought that action. His failure to make a claim during the negotiations in April, 1932, when their friendship had ceased and even though suggested by his counsel, and his executing a note of indebtedness to Fraam and subsequently paying two installments thereon without asserting right to an accounting, constitute strong evidence that Melconian knew that he had no just claim, and that his signature to the receipt represented his free and voluntary act.

It may also be said that the record affords no basis upon which an accounting for a definite amount could be ordered even by means of fair estimate. Melconian kept no books. Fraam's records were incomplete and he neglected to produce many which he claimed to have. No estimates by competent persons were offered for the period.

We think Melconian has failed to sustain the burden of proof either as to right of accounting for Harry's Taxi or the amount.

Nor can we find Fraam's claim of $6,000 established. In his other definite dealings with Melconian

he had some sort of documentary proof of the transactions. The advances, if made, were prior to September, 1930. It is hardly credible that he would engage in the sale of the Rent-A-Car business in December of that year, taking Melconian's note for $6,000, and a year and a half later demand and negotiate a settlement with a $3,000 note from Melconian and not inject into either the matter of written acknowledgment of the $6,000 he claimed. The fact that, instead of making his claim at the natural time and occasion, he presents documentary evidence consisting of an untrue statement and a note altered by himself cast such doubt upon the claim that we think he has not sustained it by a preponderance of the evidence.

The decree will be modified by changing the award to defendant to the balance due on the $3,000 note, with interest, and otherwise affirmed. Plaintiff will have costs of this court.

McDONALD, C. J., and WEADOCK, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.