NICHOLS *v.* MARTIN.

1. TRUSTS—EQUITY—CONSTRUCTIVE TRUST—EVIDENCE.

Equity will impress a constructive trust on real property and turn it over to the one to whom it rightfully belongs when it appears that title has been obtained from such a one through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness or necessities, or other similar circumstances rendering it unconscionable for the holder of the legal title to retain and enjoy the property and where there are no intervening rights of *bona fide* purchasers, and parol testimony is admissible to establish such a trust.

2. SAME—EQUITY—CONSTRUCTIVE TRUST—MORTGAGES—PAROL AGREEMENT—CONSIDERATION—FORECLOSURE.

In suit to impress constructive trust upon theater building, evidence that defendant second mortgagee obtained title to the property through fraud, misrepresentation and taking advantage of plaintiff's necessities *held,* sufficient to warrant decree against such mortgagee for owner who had oral agreement with such mortgagee that in return for forbearance in foreclosing his past due mortgage plaintiff would continue payments thereon, where defendant mortgagee thereafter induced plaintiff to submit to friendly foreclosure suit of his mortgage under promise, not then intended to be performed, that such suit would not bar any of plaintiff's interests and plaintiff otherwise acted to his detriment in leasing the property.

3. MORTGAGES—USURY—EVIDENCE.

Evidence respecting second mortgage, given to defendant in order to pay off judgment creditor, *held,* insufficient to warrant finding it was usurious.

4. ACCOUNTING—BURDEN OF PROOF—EVIDENCE.

In owner's suit to impress a constructive trust, against second mortgagee and for an accounting by lessee whose payments had been assigned to such mortgagee, evidence that lessee had made improper report and payment of gross receipts of theater upon which rental was to be calculated above minimum weekly rental *held,* insufficient to sustain plaintiff's burden of proof of right to accounting from lessee or the amount thereof.

5. SAME—BURDEN OF PROOF—ADEQUATE REMEDY AT LAW.
   Accounting is denied owner of theater as against lessee, where
   plaintiff failed to sustain burden of proof of right thereto and
   has an adequate remedy at law and such denial is made without
   prejudice to plaintiff's right thereat.

6. APPEAL AND ERROR—SETTING ASIDE FORECLOSURE—CANCELLATION
   OF INSTRUMENTS—ACCOUNTING—FORECLOSURE DE NOVO.
   In suit to impress constructive trust against second mortgagee
   who secured payments from mortgagor in an inequitable
   method, where foreclosure proceedings and sheriff's deed and
   subsequent transfers are set aside, agreement assigning rentals
   is canceled and cause remanded for accounting as to rents and
   profits collected by such mortgagee, decree is given without
   prejudice to his right to foreclosure de novo.

Appeal from Kent; Verdier (Leonard D.), J. Submitted June 2, 1936. (Docket No. 31, Calendar No. 38,986.) Decided October 5, 1936.

Bill by George C. Nichols against John B. Martin, Roy G. Taylor and City Mortgage Company, a Michigan corporation, to impress a constructive trust on real estate, for an accounting and other relief. Bill dismissed. Plaintiff appeals. Affirmed as to defendant Taylor. Reversed and remanded for decree for plaintiff as to defendant Martin.

*Butterfield, Keeney & Amberg, Harry Shulsky* and *Samuel H. Himelstein,* for plaintiff.

*Warner, Norcross & Judd,* for defendant Taylor.

*Norris, McPherson, Harrington & Waer,* for defendant Martin.

Toy, J. The plaintiff appeals from the decree of the circuit court for the county of Kent, in chancery, dismissing his bill of complaint seeking to enforce a

constructive trust in real estate; to have a second mortgage on such real estate declared usurious against defendant Martin; and accounting from such defendant; the eviction of defendant Taylor from his tenancy of the involved property; and an accounting of moneys claimed to be due from such tenant. The decree of the court was entered after a trial in which all parties produced testimony bearing on the issues involved.

Hearing this case *de novo*, we have examined the record with care and analyzed its contents, yet we do not find ourselves in full accord with the determination reached by the trial judge. We appreciate that in his determination of facts the chancellor had the opportunity, not here open to us, of observing the witnesses as they testified, and while ordinarily we are loath to disturb such finding of facts for that reason, yet attendant circumstances surrounding the whole transaction as hereinafter narrated, leave us no alternative.

In 1927 the plaintiff was the owner of real estate located at 314 Monroe avenue in the city of Grand Rapids upon which was a theater building wherein plaintiff operated a motion picture theater. At that time plaintiff held title subject to a first mortgage to the Kent State Bank in the amount of $15,000. On November 2, 1927, a judgment creditor in the amount of $12,427.72, levied execution upon the aforementioned property. In order to save the property from the sale thereunder, the plaintiff, on January 23, 1928, executed a note and mortgage in the amount of $15,000 with interest at seven per cent. per annum to one Alex Gittlen acting for the judgment creditor, which note and mortgage were then assigned by said Gittlen to defendant Martin. This second mortgage matured three years from its date.

Plaintiff continued to occupy and operate the theater, and made substantial payments practically every week on his mortgage indebtedness to Martin who applied these payments to the items of taxes, insurance, principal, and "service charges;" Martin also made payments of interest, from the amounts thus received, on the first mortgage. This was done in accordance with the agreement between parties. The note and second mortgage matured January 23, 1931; however, Martin made no demand upon plaintiff for the balance due at that time nor did he make any claim of default as against plaintiff. On July 21, 1932, plaintiff received a letter from the bank calling his attention to the fact that interest on the first mortgage, (which matured April 30, 1931) in the amount of $487.50 was past due and stating that it should be paid by July 30th, if plaintiff desired to avoid foreclosure proceedings on such first mortgage. A copy of this letter was sent by the bank to Martin. Immediately thereafter, plaintiff and Martin conferred on the matter. Plaintiff gave the following testimony, which commences with his statement that Martin there said to him:

"I don't want them to foreclose that mortgage. If they do I have to dig up $15,000 and I don't want to do it now and I can use the money, and I would like to have you let me foreclose on my second mortgage and have title to the property, and they won't foreclose on the first mortgage; he said, we will go over and talk with Mr. Conger about it, and I said I would and he made a date with me to go down and see Mr. Conger and we went down there and talked with Mr. Conger and he told him he didn't want him to foreclose that first mortgage at that time. He couldn't afford it. He said, George and I have agreed that I should have the title under the first mortgage. And he says, I am trying to save this

property for George and if you foreclose I will have to foreclose anyhow and George agreed to it, and I told him to go ahead and he says, you can pay right along just the same as you have been paying to me.

"*Q.* Who said that?

"*A.* Mr. Martin said, you can pay right along just the same as you have been, and I said that is perfectly all right.

"*Q.* Did you ask Mr. Martin to put his promises, his representations or agreement in writing?

"*A.* I did.

"*Q.* Did he do it?

"*A.* No.

"*Q.* Did he give any reason for not doing it?

"*A.* Yes. He said if he done that, he says, you are having trouble with your wife, and it will look as though I am trying to conspire to beat your wife out of something, and he said, you will have to take my word for it. My word is as good as my bond, and I said, all right.

"I was not conspiring to beat my wife in any way in connection with the foreclosure proceedings. I did not make any suggestion to Mr. Martin at that time to that effect nor at any other time. He did make such a suggestion to me.

"*Q.* What did he say?

"*A.* He said your wife has a mortgage against everything you have got, and if you get it, you couldn't save it, and if I get it you can keep on paying me.

"*Q.* You said he told you your wife had a mortgage on everything you had?

"*A.* Yes. * * * At the time I had this talk with Mr. Martin relative to his foreclosure of the second mortgage, I had had dealings with Mr. Martin since 1906 so I had known him for a period of 26 years. I had seen him from time to time during that period and had dealings with him. I had no reason to doubt the truth of what he told me at that time. I relied on the statements that he made to me.

I believed he was telling me the truth. * * * After this conversation with Mr. Martin relative to the foreclosure there was an understanding that the second mortgage was being foreclosed. I did not do anything about attempting to refinance the second mortgage in any way. I knew that the Bischoff-Munshaw act was effective in June, 1933, and that the act related to the relief of mortgagors and attempted to give mortgagors relief but I did nothing in reliance on that act or in an attempt to rely on it for the purpose of interfering with the relief under that act. I refrained from acting in these ways in reliance of the conversations and the statements previously made by Mr. Martin.''

Martin transferred the note and second mortgage to the City Mortgage Company, a corporation controlled by Martin, which commenced foreclosure by advertisement and in pursuance thereto the property was sold at sheriff's sale on November 1, 1932, and bid in by defendant City Mortgage Company for the amount then claimed to be due on such second mortgage. Later, the City Mortgage Company deeded the property to Martin, who now holds the record title. The redemption period expired November 1, 1933.

Soon after foreclosure proceedings had been started, and in August, 1932, plaintiff rented the theater under a three-year lease, with an option of two years renewal, to Southlawn Theaters, Inc., a corporation, at a rental of 15 per cent. of gross receipts with a guaranteed minimum rental of $60 per week. The lease recited the fact that foreclosure proceedings were then pending and that plaintiff agreed to secure the written consent and approval of Martin to the lease. Plaintiff requested Martin for his approval, and on August 20, 1932, Martin wrote a letter to the lessee as follows:

"If I hereafter acquire title to the Superba Theater Building, 314 Monroe avenue, through foreclosure of my mortgage on same I will not disturb you in your present lease during its life, provided both you and Mr. Nichols conform to said lease in every particular and provided the stipulated rentals are then paid to me and provided that rentals previous to that time are turned in to me to be used to satisfy the first mortgage or pay taxes.

"I assume no responsibility of any kind or character in connection with above referred lease other than stated above, and do not obligate myself in any way to protect your lease against the first mortgage, taxes, other owners or claims of any nature, or contingencies that may arise."

Plaintiff did not see a copy of this letter nor was he aware of its contents until he went to the theater to collect the rents and was there informed that the rent had been paid to Martin. Plaintiff then went to see Martin. Plaintiff testified:

"I went up to see Mr. Martin, and he says, you are away, and it is better that the rent be paid to me, and as long as the lease is to go five years, that is the only way to do it. And I said, that is all right with me. And then he says, I would like to have you sign this assignment and give me the privilege of collecting this rent, and I says, that is all right, and I wrote this on it."

The assignment was as follows:

"9/19/32   I hereby for one dollar and other valuable consideration the receipt of which is hereby acknowledged, sell, assign, transfer and set over to John B. Martin all right title and interest in and to the rentals above referred to, for him to pay taxes on above property and the interest on two certain mortgages on said property. GEORGE C. NICHOLS."

Plaintiff testified that at the time of the assignment of rent he again asked Martin to reduce to writing their understanding, but that Martin refused and stated that it was not the thing to do owing to plaintiff's marital difficulties.

Martin continued to collect rents from the premises which he applied upon the respective mortgages and upon taxes and insurance of the property. Shortly after the making of the assignment of rents, the Southlawn Theaters, Inc., assigned their lease to defendant Taylor who thereafter made the rental payments to Martin.

It is settled law in this State that equity will impress a constructive trust on real property and turn it over to the one to whom it rightfully belongs when it appears that title has been obtained from such a one through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property, and where there are no intervening rights of *bona fide* purchasers, and that parol testimony is admissible to establish such a trust. *Racho* v. *Beach,* 254 Mich. 600.

There are here no intervening rights of *bona fide* purchasers. The question then presented is: whether it appears that title was obtained by Martin from plaintiff through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of his weakness or necessities, or any other similar circumstances which render it unconscionable and inequitable for Martin to retain and enjoy the property as against the rights of plaintiff.

We are constrained to answer in the affirmative.

While Martin denied that any such agreement as testified to by plaintiff existed, his testimony, to say

the least, is not convincing. In the first place it is not consistent with the admitted facts of record and the documents admitted in evidence. His conduct in relation to the entire affair negatives his testimony and corroborates that of plaintiff. Martin had been active in the real estate business for upwards of 40 years and it must have been apparent to him, when the bank threatened foreclosure of the first mortgage, that in order to protect his rights under the second mortgage he must forestall such a foreclosure. He used the threat of the bank to foreclose its mortgage, as a means of inducing plaintiff to submit to a "friendly" foreclosure suit of the second mortgage, under the guise that he was saving the property for plaintiff and under the promise, not then intended to be performed, that such foreclosure would not bar any of plaintiff's existing interests. Martin evidently intended that through this method he would not only bar plaintiff's right to the property but that he would secure payments from plaintiff and the income from the property during the period of foreclosure and redemption. It is significant that he did receive such payments and income in the amount of approximately $3,500 during the period of foreclosure. It is unreasonable to assume that plaintiff would have voluntarily given up this income, to which he was entitled, unless there had been some understanding between him and Martin in relation thereto.

After foreclosure had been started plaintiff rented the theater, giving a lease for a period of three years thereon with an option of two years' renewal. Martin's attitude and actions in relation to this lease cannot but leave the twofold inference, first, that Martin recognized that he was holding the property for plaintiff in pursuance to an agreement between them, and second, that Martin desired to allay any

suspicion upon the part of plaintiff that he, Martin, did not intend to keep his part of the agreement. In his letter of August 20, 1932, to the lessee of the theater (hereinbefore quoted), he not only recognized plaintiff's rights in said lease during its "life" but he attempted to absolve himself from any responsibility of any kind in relation thereto, stating that he did not obligate himself in any way to protect the lease against "other owners." In the assignment of the rentals made after foreclosure proceedings had started, he recognized plaintiff's right in the property, for he therein inserted the provision that the purpose of such assignment was to pay taxes on the involved property and the interest on *two* mortgages on said property.

The lease contained a significant provision, for it covered all personal property contained in the theater. This personal property was not covered by the mortgage. It is illogical to assume that plaintiff, after foreclosure proceedings had been started, would lease his personal property for a possible term of five years, without any hope of payment therefor, unless there had been an understanding between plaintiff and Martin in relation to the property.

Plaintiff testified that the minimum rental rate of $60 per week, was inserted in the lease at the suggestion of Martin, who stated that such sum would be the minimum required to carry the property. Martin did not deny such testimony nor does he offer any reasonable explanation as to why the rents were assigned to him.

The lease also contained a provision that during its term plaintiff would not engage in any theater business in competition with the lessee. We cannot believe that plaintiff would thus give up his lifelong

occupation as well as his income unless done in reliance on the agreement between him and Martin relative to the property.

Plaintiff testified, without denial by Martin, that in October, 1934, Martin called plaintiff to his office and spoke to him about paying taxes on the property. Plaintiff also testified, which was undenied by Martin, that on several occasions shortly before this suit was started Martin asked Nichols for a quitclaim deed to the premises. These events took place after the period of redemption had expired and argue for plaintiff's contention.

All in all, the facts and circumstances surrounding this entire transaction bespeak but one conclusion, namely, that Martin planned and carried into effect a scheme whereby he could and did obtain title to plaintiff's property through fraud, misrepresentation, and taking advantage of plaintiff's necessities. We will therefore constructively impress a trust on the property in behalf of plaintiff.

Plaintiff urges that in determining the amount of mortgage indebtedness we should hold the second mortgage usurious. The testimony does not warrant such a finding.

Plaintiff also seeks an accounting from defendant Taylor of rents claimed by plaintiff to be due from defendant Taylor. It is plaintiff's claim that defendant Taylor did not make a proper report and payment of the gross receipts of the theater upon which rental was to be calculated above the minimum weekly rental. Scores of pages of the record are taken up by plaintiff in an attempt to prove the lessee's default. We shall not attempt to recount it here because of its volume for we are not convinced that equity may here compel an accounting. *Patrons' Mutual Fire Ins. Co.* v. *Holden,* 245 Mich. 493; *Equi-*

*table Life Assurance Society of the United States* v. *Brown,* 213 U. S. 25 (29 Sup. Ct. 404). The proof 'does not show plaintiff's right to an accounting nor the amount to be accounted for. The burden of this proof is upon plaintiff. *Melconian* v. *Fraam,* 265 Mich. 378. He has not sustained it. In addition, plaintiff has an adequate remedy at law and our holding is without prejudice to his rights thereat.

The plaintiff may have our decree as against defendant Martin setting aside and holding for naught the foreclosure proceedings and the sheriff's deed made in pursuance thereto, as well as any subsequent transfers thereof; providing for cancellation of the assignment of rentals herein mentioned, and remanding the cause to the trial court for an accounting of the rents and profits collected by defendant Martin which shall there be credited to plaintiff. This decree is without prejudice to the right of defendant Martin to foreclosure *de novo.*

The decree of the lower court as to Taylor is affirmed. Plaintiff will have his costs of both courts against Martin. Defendant Taylor will have costs against plaintiff.

North, C. J., and Fead, Butzel, Bushnell, and Sharpe, JJ., concurred with Toy, J.

Wiest, J., concurred in the result.

Potter, J., did not sit.