**Anice CAUBLE, Administratrix of Estate of Thomas H. Cauble, Deceased, Appellant,**

**v.**

**Tom HANDLER, Appellee.**

**No. 17451.**

Court of Civil Appeals of Texas, Fort Worth.

Dec. 14, 1973.

Rehearing Denied Jan. 11, 1974.

Denning Schattman, and W. Garrett Morris, Fort Worth, for appellant.

Owens & Fortney, and Richard Owens, Fort Worth, for appellee.

OPINION

BREWSTER, Justice.

This is a suit brought by the administratrix of the estate of a deceased partner against the surviving partner for an accounting of the partnership assets. No jury was involved and the trial court did not file findings of fact and conclusions of law. Tom Handler, the defendant, was the surviving partner and Thomas Cauble was the deceased partner. The partnership was engaged in selling at retail furniture and appliances and each partner owned a 50% interest.

The trial court awarded the plaintiff, the administratrix of the estate of the deceased partner, a judgment against the surviving partner for $20.95 plus six per cent interest thereon from February 2, 1973, the date of the judgment. The judgment also awarded the court appointed auditor a fee in the sum of $1,800.00 for his services in auditing the partnership accounts, taxed the item as court costs, and then taxed the entire court costs against plaintiff. It is from this judgment that plaintiff is appealing. We will refer herein to the parties as they appeared in the court below.

We reverse and remand the case for a new trial.

The plaintiff's first point is that the trial court erred in basing its judgment upon the book value of the partnership assets that were arbitrarily established by defendant. Her eighth point of error is that the court erred in refusing to consider the cash market value of the partnership assets in arriving at its judgment.

We sustain both of these points of error.

It is apparent from the record that the trial court determined the value of the

partnership inventory by using the cost or book value thereof. Thomas Cauble died on May 18, 1971. The defendant, Handler, the surviving partner, thereafter filed an income tax return for the partnership covering the period from December 31, 1970, to May 18, 1971, wherein he stated in Section M thereof that the value of each partner's one-half interest in the partnership as of the date of Cauble's death (May 18, 1971) was $40,344.39. This is the exact figure the record reflects the trial court found to be the value of each partner's interest as of that date, before deducting from such figure each partner's one-half of $1,502.42 in partnership debts that came to light after this tax return was filed. (Tr. 23) Handler kept the partnership books and took a physical inventory that was used by the partnership tax man in preparing this final partnership income tax return. In preparing the inventory Handler testified that he priced each item in the inventory "According to the invoices, according to cost." Again he stated: "Take the count first and then you . . . go back to the invoice and pick up the amount." (S/F 125–126)

The value of the partnership inventory, arrived at as above indicated, was used by the accountant in preparing the final income tax return and was used by the court in determining the value of the plaintiff's interest in the partnership at the date of Cauble's death.

■ The court erred when he used the cost price or book value of the partnership assets in determining the value of the inventory. The following is from the opinion in the case of Johnson v. Braden, 286 S.W.2d 671 (San Antonio, Tex.Civ.App., 1956, no writ hist.), at page 672: "The judgment must be reversed. Market values of the company assets are wholly absent from the record, and Johnson, on cross-examination, demonstrated that the plaintiff's audit was based on book values. *It should have been based on market value.*" (Emphasis ours.)

See also Caplen v. Cox, 42 Tex.Civ.App. 297, 92 S.W. 1048 (1906, writ ref.) and Hurst v. Hurst, 1 Ariz.App. 227, 401 P.2d 232 (1965). This Hurst case holds that book values are simply arbitrary values and cannot be used. The case also holds that the amount for which the partnership assets were sold four years after the date of dissolution is also not proper evidence to be considered on the issue of market value of the partnership property at date of dissolution.

The defendant contends that plaintiff offered no evidence during the trial tending to establish the reasonable cash market value of the partnership assets at date of dissolution and that the burden of proof was on the plaintiff to establish such value. He contends that since the record contains no evidence as to the market value of the inventory that the court's action in using book or cost value could not be reversible error.

■ We agree that the burden of proof in this accounting case was on the plaintiff to show that Handler was indebted to the deceased's estate and to show the amount of such debt. Plaintiff thus had the burden to prove the market value of the partnership assets. See Taormina v. Culicchia, 355 S.W.2d 569 (El Paso, Tex.Civ.App., 1962, ref., n. r. e.); Palmer v. Manville, 228 N.W. 20 (Iowa Sup., 1929); Oskaloosa Sav. Bank v. Mahaska County State Bank, 205 Iowa 1351, 219 N.W. 530 (1928); and Nichols v. Martin, 277 Mich. 305, 269 N.W. 183 (1936).

■ When the estate of a deceased partner sues the surviving partner for an accounting of partnership assets the burden of proof is upon the plaintiff to prove the amount for which the surviving partner should account to the deceased's estate. See Nichols v. Martin, supra, and the Oskaloosa Sav. Bank case, supra. Once the amount that should be accounted for is established, it then becomes the duty of the surviving partner to account to or to pay

to the estate of the deceased partner that sum.

It appears from the record before us that much of plaintiff's troubles in this case have resulted from an erroneous belief that the burden of proof in this case was on the defendant.

We do not agree, however, that there was no legitimate evidence offered during the trial that could be properly considered by the trial court on the issue of market value of the partnership inventory involved.

Prior to trial time the learned trial court had, pursuant to plaintiff's motion, appointed an auditor under Rule 172, Texas Rules Civil Procedure, to state the account between the parties and to make a report thereof to the court.

During the trial the plaintiff offered in evidence Exhibit B of the auditor's report which read as follows: "Inventory as of May the 18th, 1971, inventory at lower cost or market, $90,227.61." This constituted some legitimate evidence as to the market value of the inventory at the time in question.

The defendant did file exceptions to the auditor's report. The law on this is that even though the auditor's report is excepted to by one or more of the parties, it is still admissible in evidence. And since it is admissible it can be considered by the fact finder. In such a case the report is prima facie proof of the matters therein stated. Cook v. Peacock, 154 S.W.2d 688 (Eastland, Tex.Civ.App., 1941, ref., w. o. m.). In the absence of exceptions to the auditor's report it is conclusive of findings of fact that are properly contained therein. Griffin v. Sevier, 234 S.W.2d 272 (Galveston, Tex.Civ.App., 1950, no writ hist.).

Much of plaintiff's argument under her first three points of error is devoted to her contention that the trial court erred in failing and refusing to allow her a share of the profit made by Handler by continuing the partnership business between date of dissolution and date of judgment.

We sustain this contention.

The undisputed evidence shows that Handler continued to operate and to control the partnership business after the death of Cauble and down to the trial date, and that he used and sold the assets of the partnership during all that period. The record does not show that this was done with the consent of the administratrix of the deceased's estate.

Exhibit E of the court appointed auditor's report was offered into evidence and it showed that during the period from May 19, 1971, to May 21, 1972, Handler made a net profit of $40,163.42 out of operating the partnership business after dissolution. The fact that this net profit was made is undisputed. As demonstrated above this auditor's report was legitimate evidence of the amount of those profits.

The defendant, at page 11 of his brief, admits that plaintiff tried this case on the theory that she was entitled to recover, after the accounting, one-half of the value of the partnership assets, plus a share of the profits from the date of Cauble's death to date of judgment.

The trial court, in its judgment, refused to allow the plaintiff to recover one-half of the profits that were made by Handler after the dissolution of the partnership by his continued operation of the business. Instead the trial court awarded plaintiff a recovery of some interest in the amount of $3,764.89.

It is section 38(1) of Article 6132b, Vernon's Ann. Texas St., that gave the representative of the estate of the deceased partner the right to elect, if she so desired, to have the partnership assets liquidated, the debts paid, and the share of each partner in the surplus paid to him in cash.

The plaintiff in this case did not elect to have this done.

If that election is made it many times results in the sacrifice of going concern values. See "Law of Partnership" by Crane and Bromberg, page 474, note 43.

The following quotation explains the several elections that were open to the plaintiff under the fact situation that we have here. It is from "Law of Partnership" by Crane and Bromberg, Section 86(c), pages 495–496, and is as follows:

"If a partnership is seasonably wound up after dissolution, profits and losses during the liquidation are shared by the partners in proportion to their pre-dissolution ratios, unless they have agreed otherwise. . . .

■ *"The situation changes if the business is not wound up, but continued, whether with or without agreement.* In either case, the non-continuing partner (or his representative) has a first election between two basic alternatives, either of which can be enforced in an action for an accounting. He can force a liquidation, taking his part of the proceeds and thus sharing in profits and losses after dissolution. Alternatively, he can permit the business to continue (or accept the fact that it has continued) and claim as a creditor (though subordinate to outside creditors) the value of his interest at dissolution. This . . . means he is unaffected by later changes in those values. *If he takes the latter route, he has a second election to receive in addition* either interest . . . *or profits from date of dissolution.* This second election shields him from losses, . . . .

"The second election may seem one-sided. It serves as 'a species of compulsion . . . to those continuing the business . . . to hasten its orderly winding up.' In part it is compensation to the outgoing partner for his liability on partnership obligations existing at dissolution; this liability continues until satisfaction, which would normally occur in the process of winding up. . . .

"The second election rests partly on the use of the outgoing partner's assets in the conduct of the business. . . . his right to profits ends when the value of his interest is properly paid to him." (Emphasis ours.)

Section 42 of Art. 6132b, V.A.T.S., is the part of the Texas Uniform Partnership Act that gives the representative of the estate of a deceased partner a right to share in the profits, if he elects to do so, if the other partner continues to operate the business after dissolution.

The great weight of authority is to the effect that Sec. 42 of Art. 6132b, V.A.T.S., giving the option to take profits to the non-continuing partner is applicable regardless of whether the business is continued with or without the consent of the non-continuing partner or the representative of his estate. For a full discussion of this see the law review article in 63 Yale Law Journal 709, entitled "Profit Rights and Creditors' Priorities After a Partner's Death or Retirement: Section 42 of the UPA" and the additional article on this subject in 67 Harvard Law Review 1271.

■ It is manifestly clear that the plaintiff in this case elected, as she had a right to do under Sec. 42, Art. 6132b, V.A.T.S., to have the value of Cauble's partnership interest at the date of dissolution ascertained and to receive from the surviving partner, Handler, as an ordinary creditor, an amount equal to the value of Cauble's interest in the dissolved partnership at date of dissolution, plus the profits attributable to his right in the property of the dissolved partnership.

The following proceedings that occurred during the trial show that this election was made by plaintiff:

"THE COURT: You think they're making an election for the profits, is that correct, sir?

"MR. OWENS: The way they've been introducing their evidence and talking here I presume they have.

"MR. SCHATTMAN: That's correct.

"THE COURT: If you have not done so that is your election?

"MR. SCHATTMAN: Right.

"THE COURT: All right, then that disposes of that point."

Although the undisputed evidence showed that Handler made over $40,163.42 by operating the partnership business after dissolution, the Court refused to allow plaintiff to recover from Handler the Cauble estate's share of those profits, which plaintiff had a right to do. In lieu of profits, which plaintiff elected to recover, the Court awarded her six per cent interest on what he found to be the cost or book value of the Cauble interest in the partnership at date of dissolution. This interest amounted to $3,764.89, which sum was considerably less than a one-half interest in the $40,163.42 in profits that Handler made out of his operation of the partnership business after dissolution.

This error was obviously prejudicial to plaintiff.

In plaintiff's fifth point of error she contends that the trial court erred in taxing all the costs incurred in connection with the accounting case, including the court appointed auditor's fee of $1,800.00, against the plaintiff.

Since this case is being reversed and remanded the only reason we even mention this point is because it will obviously come up again on a retrial of the case.

The record does not reveal the court's reason for taxing all the court costs, including the $1,800.00 court appointed auditor's fee, against just one of the two partners involved in this accounting suit.

We will simply call attention to the following general rules and leave the matter there at this time.

We recognize that the trial court does have a broad discretion in taxing the costs in a case like this and there are occasions where the costs have been taxed against just one partner. But, as a general rule, the costs that are incurred in an accounting case are ordered paid out of the partnership estate. See 68 C.J.S. Partnership § 448, p. 1001, and "Partners and Partnerships", by Barrett and Seago, Vol. 2, Chapter 9, Sec. 6.1. This results in the costs being paid by the partners in proportion to their interest in the business.

It would seem that in the ordinary case both partners would benefit by having the state of the account between them legally adjudicated so that the partnership can be terminated. One partner is not obligated to accept the adverse party's word for the state of the partnership account.

In view of a retrial of this case we also suggest that some evidence be then heard on the matter of setting the auditor's fee and that it be put into the record. It is rather difficult for an appellate court to pass on the question of whether the fee allowed is reasonable in the absence of evidence as to the type of work done, the time consumed doing it, the type and skill of employees that did the work, and the charges usually made in the community for that type work. The complaint about the reasonableness of this auditor's fee is made in plaintiff's seventh point of error. We overrule the point because as plaintiff says, there is no evidence in the record tending to show whether or not the fee was reasonable. We believe it was the burden of the plaintiff to make the record show that the fee was unreasonable before he can complain about the amount of the fee.

We have considered all of plaintiff's points and overrule all of her contentions except those that are hereinabove expressly sustained.

Reversed and remanded for a new trial.