NO. 07-05-0290-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 11, 2007

_____

BROGAN, LTD., A Partnership, and TINA MARIE BROGAN,

APPELLANTS

V.

W. CHARLES BROGAN, III, M.D., PH.D, P.A., A Professional
Corporation, and WALTER CHARLES BROGAN, III, Individually,

APPELLEES
_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-518,696; HONORABLE MACKEY K. HANCOCK, JUDGE

_____

Before PIRTLE, J., and BOYD and REAVIS, SJJ.[1]

**MEMORANDUM OPINION**

Appellants, Brogan Ltd. and Tina Marie Brogan, appeal from a judgment rendered

in favor of W. Charles Brogan III, M.D., Ph.D., P.A., a Professional Corporation (Brogan

[1]John T. Boyd, Chief Justice (Ret.), and Don H. Reavis, Justice (Ret.), Seventh
Court of Appeals, sitting by assignment.

P.A.), and Walter Charles Brogan, III, individually, (Dr. Brogan), in a breach of contract and tort action related to their partnership interests in Brogan Ltd. Appellants assert three issues: (1) they are entitled to judgment as a matter of law denying Dr. Brogan's claim for capital contributions in 2003; (2) they are entitled to a new trial because no jury question was submitted to determine the correctness of the partners' capital accounts and/or Dr. Brogan's capital contribution in 2003; and (3) the trial court erred in granting Appellees' motion for a directed verdict on Appellants' promissory estoppel claim. We affirm.

## **BACKGROUND**

This appeal concerns a dispute arising from the dissolution of a family limited partnership following divorce. Adequate consideration of the issues raised in this appeal necessitates a review of the factual and procedural history of the parties' dispute.

### **I. Factual**

Dr. Brogan is a medical doctor who conducted his medical practice as a professional association, Brogan P.A. Dr. Brogan and Tina Brogan were husband and wife until their marriage was dissolved by divorce on December 6, 2002.

In 1999, the Brogans established Brogan Ltd. as a family limited partnership. The Limited Partnership Agreement was between husband and wife, both as general and limited partners. As general partners, the Brogans were authorized to acquire, sell,

2

convey, operate and maintain, mortgage, encumber or otherwise deal with any real property without the necessity of joinder of the other general partner.

Capital accounts for each partner were established in accordance with IRS Treasury regulations related to partnerships. Their capital accounts were credited with the fair market value of each partner's capital contribution and subsequently debited with the fair market value of distributions to each partner. The initial capital contributions of stock and cash were allocated identically to Tina Brogan and Dr. Brogan: one percent (1%) to each as a general partner and forty-nine percent (49%) to each as a limited partner. Later that year, Dr. Brogan made a gift to Tina of forty percent (40%) of his limited partnership interest altering the ownership interests in their capital accounts. The end result was that Dr. Brogan owned, as his separate property, 1% as a general partner and nine percent (9%) as a limited partner, and Tina owned, as her separate property, 1% as a general partner and 89% as a limited partner. The percentages of ownership remained the same through the Brogans' divorce.

Under the Partnership Agreement, the percentage of the capital account owned by each partner affected their relative ownership interests in the partnership assets. Subsequent capital contributions or distributions also affected a partner's ownership interest. For instance, if the percentages of ownership for each partner started at seventy percent (70%) and thirty percent (30%), and there were no withdrawals or contributions, then their percentage of ownership stayed the same throughout the life of the partnership.

3

However, if the partner with a thirty percent (30%) interest contributed additional capital, then their thirty percent (30%) interest would increase and the other partner's seventy percent (70%) interest would decrease proportionately. If the partner with seventy percent (70%) interest took money out of the partnership, then their seventy percent (70%) interest would decrease and the other partner's thirty percent (30%) interest would increase proportionately. Partnership losses were applied to the capital accounts according to the partners' ownership interests.

In 2000, the Brogans decided to purchase a building from which Dr. Brogan would conduct his medical practice. The Brogans contacted Cindy Snell, a real estate agent, to assist them in their search for property. They eventually settled on a building in Lubbock, and acquired a loan from Clay Leaverton, a loan officer at American State Bank, to purchase and remodel the building. In August 2000, the Brogans closed on a note and at the suggestion of Neriman Guven, the partnership's accountant, the building was placed in the name of Brogan Ltd.

Dr. Brogan subsequently moved his practice into the building where he continued his practice until the Brogans were divorced. Shortly thereafter, Dr. Brogan moved out of the building and ceased paying rent to Brogan Ltd. In August 2002, Tina signed a listing agreement with Snell to sell the building. Snell entered into negotiations with an orthopedic group. The group signed a contract contingent on a successful feasibility study. The feasibility study failed, but the parties continued to negotiate. In order to make the deal

4

more attractive for the buyer, Dr. Brogan agreed to include the x-ray equipment and telephone system used in his practice.

In December 2002, Dr. Brogan requested that his attorney send a letter to Tina's attorney indicating the orthopedic group's contract was dependent on the successful outcome of a second feasibility study based upon an assumption that Dr. Brogan would contribute his x-ray equipment and telephone system to the building's sale.[2] The letter also indicated that, if the sale was completed using his contribution, he would consider the contribution to be a personal capital contribution to Brogan Ltd., thereby crediting his capital account. He received no response to his letter.

On February 14, 2003, the sale of the building closed, and the x-ray equipment and telephone system were contributed toward the sale and accepted by the buyers. Brogan Ltd. suffered a loss on the sale of the building. After the closing, Dr. Brogan went to the Bank and signed papers to purchase and transfer the leased equipment. Dr. Brogan testified that he waited until the building sold because he was concerned the orthopedic group might back out. BancLeasing calculated the value of the leased equipment and agreed to transfer ownership to Brogan P.A. for $243,574.02. Brogan P.A. transferred the equipment to Dr. Brogan and he transferred the equipment to Brogan Ltd. as a personal capital contribution.

_____

[2]Dr. Brogan did not personally own the x-ray equipment and telephone system. Brogan P.A. leased the equipment from BancLeasing, Inc. Although BancLeasing later changed its name to CashFlow Lease, we will use BancLeasing throughout this opinion.

Guven subsequently conducted an accounting to determine the effect of the loss incurred on the building's sale and Dr. Brogan's subsequent capital contribution on the capital accounts of Tina Brogan and Dr. Brogan. In conformance with the sequence in which the transactions occurred, she first deducted the losses from the sale of the building from the partners' capital accounts, and then added Dr. Brogan's capital contribution to his individual capital account. Accordingly, the $444,904.94 loss on the sale of the building was charged to the capital accounts of the partners in accordance with the percentages as they existed prior to the sale. Guven then valued the leased equipment at $243,574.02 and credited the capital account of Dr. Brogan in accordance therewith. According to Guven, BancLeasing's valuation supplied the fair market value of the leased equipment because the sale was an arm's length transaction between unrelated parties, neither of which was under an obligation to purchase or to sell.

## II. Procedural

The case below involved two parts: Appellants' action seeking damages for breach of contract, fraud, conversion, promissory estoppel, partial performance and breach of partnership fiduciary duties and Appellees' counterclaim seeking an accounting of Brogan Ltd.'s capital accounts, distribution of its partnership assets, and dissolution.

In 2003, Appellants filed motions for a final accounting to determine their respective partnership interests in Brogan Ltd. and a final distribution of the partnership assets. Appellants specifically requested that the trial court enter an order directing the disposition

6

of Brogan Ltd.'s remaining assets in accordance with the Brogans' ownership interests. Appellees filed similar motions. Per the parties' agreement, the trial court ordered that an accounting be conducted by Guven.[3]

Guven conducted an accounting of the Brogans' capital accounts from Brogan Ltd.'s inception to April 30, 2003. She determined the status of the capital accounts and the partners' ownership interests. In her opinion, the accounting complied with the terms of the Partnership Agreement, IRS Treasury Regulations, and generally accepted accounting practices. She also opined that the accounting fairly and accurately stated the position of the capital accounts as of April 30, 2003.

In January 2004, Judge Sam Medina held a two-day hearing on the parties' motions. The Brogans and Guven testified. Guven's accounting was accepted into evidence without objection. In October 2004, Judge Medina sent a letter to the parties indicating that he intended to dissolve the partnership and order a distribution of its assets based upon Guven's testimony and accounting. In December 2004, Judge Medina issued an order distributing the partnership assets. In apparent recognition of Dr. Brogan's capital contribution of the leased equipment in 2003 of $243,574.02, the trial court distributed

---

[3]Guven had served as accountant for the Brogans, Brogan Ltd., and Brogan P.A. She had been a certified public accountant for twenty years, and worked for two big six accounting firms: Coopers & Lybrant and KPMG Peat Marwick. She also worked as a vice president and trust officer in the Trust Department of American State Bank. She had earned a Masters Degree in Taxation from Texas Tech University and taught graduate courses at Tech for seven years. She was a certified personal financial specialist, financial planner and an employee benefit specialist.

7

$318,695.22 to Dr. Brogan, and Tina received the remaining assets. Judge Medina's order indicated that it was not a final judgment on the merits insofar as the assets were concerned, but a preliminary order pending a final resolution of Appellants' remaining issues.

In March 2005, Appellants filed their Third Amended Petition. The Amended Petition asserted various contract and tort actions. Among the damages sought by Appellants was a claim for damages based upon Dr. Brogan allegedly requesting or requiring Guven to credit him with valueless capital contributions in order to significantly reduce Tina's ownership in Brogan Ltd. while substantially increasing his ownership interest.

Following trial, the court granted a directed verdict on Appellants' claim of promissory estoppel and then charged the jury on Appellants' remaining claims for partial performance and breach of partnership duties. The jury returned a verdict in Appellees' favor. Appellants filed motions for judgment notwithstanding the verdict, reconsideration and a new trial. All post-verdict motions were denied. On May 27, 2005, the trial court entered judgment that Appellants take nothing from Appellees and this appeal followed.

## DISCUSSION

Appellants contend the trial court erred in its distribution of the partnership assets following the bench trial, and again when the trial court overruled Appellants' Motion for Judgment Notwithstanding the Verdict upon conclusion of the jury trial. Appellants assert

they were entitled to a finding, in both proceedings, that Dr. Brogan was not entitled to a capital contribution to his partnership account for the leased equipment, and consequently judgment as a matter of law. Appellants next contend that the trial court's rejection of a tendered jury instruction entitles them to judgment as a matter of law or reversal/remand. And finally, Appellants ask this Court to reverse the trial court's directed verdict on their affirmative action for promissory estoppel and remand for a new trial on the merits.

## I.    Legal Standards

The factual findings of a trial court are reviewed under the same legal and factual sufficiency standards applicable to jury findings. *RAJ Partners, LTD. v. Darco Construction Corp.,* 217 S.W.3d 638, 648 (Tex.App.—Amarillo 2006, no pet.). Here, where the trial court issued no specific findings of fact or conclusions of law following the bench trial, the judgment implies all findings of fact necessary to support it. *Sotelo v. Gonzales*, 170 S.W.3d 783, 787 (Tex.App.—El Paso 2005, no pet.). And, where judgment is premised on a jury verdict, the court considers the evidence in a light most favorable to the verdict, and indulges every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex. 2005).

Legal sufficiency points of error are designated "no evidence points" or "matter of law points" depending upon whether the complaining party had the burden of proof. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 275-76 (Tex.App.—Amarillo 1988, writ denied). The appropriate legal sufficiency challenge to a fact finding upon which

9

the complaining party does not have the burden of proof is a "no evidence" point. *Id*. Conversely, the appropriate legal sufficiency challenge to a fact finding upon which the complaining party had the burden of proof is a "matter of law" point. *Id.*

In reviewing a "no evidence" point, we consider only the evidence and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences. *Id*. If there is more than a scintilla of evidence to support the finding, the "no evidence" challenge must fail. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair minded people to differ in their conclusions. *Id*. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of fact. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S.1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004).

In reviewing "matter of law points," the party who bore the burden of proof below on the challenged issue must show on appeal that a contrary finding was established as a matter of law. *RAJ Partners*, 217 S.W.3d at 648. First, we examine the record for evidence supporting the court's finding, ignoring all evidence to the contrary. *Id.* If no evidence appears to support the finding, we must then examine the entire record to determine whether the contrary position is established as a matter of law. *Id*. The standard on appeal is whether the findings were against the great weight and preponderance of the evidence

or should be reversed as a matter of law. *Double Ace, Inc. v. Pope,* 190 S.W.3d 18, 28 (Tex.App.—Amarillo 2005, no pet.).

In making this review, we are not a fact finder and we do not substitute our judgment for that of the trial court or jury, even if a different answer could have been reached on the evidence. *Columbia Medical Center Subsidiary, L.P. v. Meier*, 198 S.W.3d 408, 414 (Tex.App.—Dallas 2006, pet. denied). It is well established that the jury weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies; *id.*, and, in a bench trial, the judge as the trier of fact performs these same functions. *Intec Systems, Inc. v. Lowrey,* 230 S.W.3d 913, 920 (Tex.App.—Dallas 2007, no pet. h.).

## II.      Issue One

Appellants contend they are entitled to judgment as a matter of law on the issues related to the distribution of partnership assets ordered by the trial court after the bench trial. In support, they argue that Dr. Brogan failed to establish the fair market value of his capital contribution of the leased equipment and its subsequent transfer to Brogan Ltd. in conformance with the Partnership Agreement. Because Dr. Brogan had the burden of proof on these issues at the bench trial, we examine this challenge under a "no evidence" standard of review.

As a subsidiary issue, Appellants also claim the trial court erred in overruling their Motion for Judgment Notwithstanding the Verdict and rendering judgment for Appellees on

Appellants' claim for breach of partnership duties. Because Appellants had the burden of proof on the remaining causes of action tried by jury, we examine this challenge under a "matter of law" standard of review.

## A. Bench Trial

### 1. Fair Market Value of the Leased Equipment

Appellees satisfied their burden of proof on this issue. Both Guven and Dr. Brogan testified to the fair market value of the leased equipment. Guven was the only expert to testify, and her accounting of the partnership assets and ownership interests in the capital accounts was admitted without objection. She testified that the leased equipment purchased by Dr. Brogan and contributed to the sale of the building owned by Brogan Ltd. had a value of $243,574.02. According to Guven, the fair market value of the leased equipment was determined by BancLeasing, a disinterested party.

Guven testified the equipment was leased under an operating agreement. And, under an operating agreement, the value of the leased equipment includes the value of the equipment at the end of the leasing term plus the lease payments which represent the payment of principle and interest. She explained that, because the sale occurred prior to the end of the leasing term, the remaining lease payments discounted by the interest remaining to be paid, and the fair market value of the equipment at the end of the lease period were added together to obtain its present value. Based in part on documentary

12

evidence, she testified that the total sales price of the equipment contributed to the sale of the building was $243,574.02. Both Guven and Dr. Brogan testified that $243,574.02 represented the price agreed to between a willing seller, BancLeasing, and a willing buyer, Brogan P.A., in an arms-length transaction between unrelated parties.

This valuation comports with the terms of the Partnership Agreement, Texas law, and the IRS Treasury Regulations. Section 10.6 of the Partnership Agreement provides that the Agreement "shall be governed and construed" in accordance with Texas law. Texas courts have consistently defined fair market value broadly to mean the price a piece of property would bring on the open market if the seller and buyer were not compelled to enter into the transaction. *City of Harlington v. Estate of Sharboneau*, 48 S.W.3d 177, 187 (Tex. 2001). Moreover, the value of a lease is considered under Texas law in a determination of fair market value when the property leased is sold from lessor to lessee. *Petula Associates, Ltd. v. Dolco Packaging Corp.*, 240 F.3d 499, 502-03 (5th Cir. 2001) ("If Texas's definition of 'fair market value' is applied, the value of the lease should be considered.").[4]  *See generally* Treas. Reg. § 1.170A-1(c)(2) (as amended in 1996).

---

[4]Appellants' cases are inapposite. They stand for the proposition that book value, an arbitrary valuation assigned by a partner, is an improper method of valuation for the purposes of a final distribution. *Cheek v. Humphreys*, 800 S.W.2d 596, 598 (Tex.App.—Houston [14[th] Dist.] 1990, writ denied) (Book value was determined by cost less depreciation.); *Cauble v. Handler*, 503 S.W.2d 362, 364 (Tex.App.—Fort Worth 1974, writ ref'd n.r.e.) (Book values are arbitrary values assigned by partners.); *Johnson v. Braden*, 286 S.W.2d 671, 672 (Tex.Civ.App.—San Antonio 1956, no writ) (Distribution of partnership assets on dissolution should be according to market value, not book value). Here, the value of the capital contributions was determined by market value, *i.e.* an arm's-length sale between a willing buyer and a willing seller, not book value.

13

Accordingly, we find there was probative evidence of fair market value sufficient to satisfy the terms of the Partnership Agreement, and the trial court's findings were not clearly wrong or manifestly unjust.

**2.      Transfer to Brogan Ltd.**

Appellees met their burden of proof on this issue as well.  Guven and Dr. Brogan established the fact of his capital contribution of the leased equipment to Brogan Ltd. through the sale of the building.  Guven testified that Dr. Brogan transferred the leased equipment to Brogan Ltd. on February 14, 2003.  She further testified that, in performing the accounting, she had seen documents indicating that the leased equipment passed from Brogan P.A. to Dr. Brogan.  Both Tina Brogan and Dr. Brogan testified that, under the Partnership Agreement, a limited partner could make a capital contribution and accept it into the partnership without consultation or joinder of the other partner.  In fact, they both testified that they had transacted business utilizing partnership assets in this fashion without supplying any underlying transactional documentation to the other partner.  Further, Guven's accounting recognized Dr. Brogan's capital contribution as a valid capital contribution, and she testified that her accounting was performed in accordance with the Partnership Agreement, generally accepted accounting procedures, and federal tax and Treasury regulations.

Appellants insist that, in order for there to be a valid transfer or capital contribution to Brogan Ltd., there must be an express document evidencing the conveyance of the

leased equipment from Dr. Brogan to Brogan Ltd. Nevertheless, Appellants cite to no case or provision of the Partnership Agreement in support of this contention. In fact, the Brogans' testimony indicates that transacting partnership business in this fashion would be the exception, not the rule. Accordingly, we find that there was probative evidence sufficient to satisfy the terms of the Partnership Agreement that Dr. Brogan transfer the leased equipment to Brogan Ltd. in conjunction with the sale of the building.

## B.     Jury Trial

Appellants' challenge to the legal sufficiency of the jury's verdict is similar, if not identical, to their challenge to the trial court's distribution of Brogan Ltd.'s assets. Appellants contend they are entitled to judgment as a matter of law because Appellees failed to meet their burden of proof and re-establish the validity of Dr. Brogan's capital contributions at the jury trial. Appellants also contend that Appellees' failure to seek a jury instruction on the issue of the validity of Dr. Brogan's capital contributions entitles them to judgment as a matter of law or a new trial because there was no jury determination in Appellees' favor. We disagree.

### 1.     Burden of Proof

Because the jury trial was on Appellants' remaining causes of action, Appellants had the burden of proof on all issues tried before the jury. Appellees' counterclaim calling for a final accounting and distribution of the partnership assets had been tried by the trial court

with the consent of the parties. Following the bench trial, the issues that remained related to Appellants' causes of action as pled in their Third Amended Petition, *i.e.,* their contract and tort claims.

The record clearly illustrates that Appellants and Appellees consented to a bench trial of Appellants' counterclaim to dissolve the partnership, make an accounting and distribute Brogan Ltd.'s assets. Prior to the bench trial, both parties had filed motions for a final accounting and distribution of the partnership's assets. In August 2003, Appellants filed a Motion for *Final* Accounting, and requested "a *final* hearing . . . on the *final* accounting for the purpose of determining the partnership interest as between the general and limited partners, Tina Brogan and Walter Charles Brogan, III, individually." (Emphasis added). Appellants further requested that, at the final hearing, the court enter an order "direct[ing] the distribution of the property remaining in the hands of Brogan Ltd., in a fair and equitable manner to the partners of Brogan, LTD, *per their ownership shares.*" (Emphasis added). In addition, prior to the hearing, both parties agreed that Guven would perform an accounting of the partnership, its assets, and partnership capital accounts.

The parties' motions were heard before Judge Medina in a two day hearing. Both parties were represented by counsel, made oral arguments, called witnesses, admitted the accounting without objection, and adduced testimonial and documentary evidence on issues related to the accounting, partnership capital accounts, and Dr. Brogan's capital contribution. After the hearing, Judge Medina indicated to the parties that he intended to

16

dissolve the partnership and order a distribution of its assets based upon Guven's testimony and accounting. Two months later, Judge Medina granted Appellees the relief sought by their counterclaim and issued an order distributing the partnership assets in conformance with Guven's accounting. The order was not a final judgment on all the issues in the suit but a preliminary order pending a final resolution of Appellants' remaining issues related to its contract and tort actions.

Appellants entered into a hearing before the court at their request and without objection, and proceeded to fully participate in the hearing for the determination of fact issues presented by both parties. The parties had consented to try before the court all fact issues related to the accounting, the partnership's assets, and the partner's capital accounts with the exception of Appellants' remaining causes of action. And, after a full and fair hearing on the parties' motions, the trial court ruled adversely to Appellants' position regarding the capital contributions and accounts related to the leased equipment. Because Appellants consented to try all the fact issues before the court, they are not now entitled to have a jury decide these fact questions. *Hernandez v. Light Pub. Co.*, 245 S.W.2d 553, 554 (Tex.Civ.App.—San Antonio 1952, writ ref'd). *See generally Faulk v. Faulk,* 23 Tex. 653, 665-66 (1859) (Where parties consent to the withdrawal of an issue from the jury, the parties are deemed to have waived their right to have a jury decide the issue.); *Walker v. Walker*, 619 S.W.2d 196, 198 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.).

Following the bench trial, Appellants filed their Third Amended Petition asserting, among other actions, various breaches of partnership duties and damages based upon allegations that Dr. Brogan improperly requested that Guven credit him with valueless capital contributions in order to reduce Tina's ownership interest in Brogan Ltd. Appellants had the burden of proof at the jury trial on these affirmative claims for relief related to Dr. Brogan's capital contributions. *See Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 482 (Tex. 1984) ("It is a well accepted postulate of the common law that a civil litigant who asserts an affirmative claim for relief has the burden to persuade the finder of fact of the existence of each element of his cause of action."); *Russell v. City of Bryan*, 919 S.W.2d 698, 704 (Tex.App.—Houston [14th Dist.] 1996, writ denied).

Accordingly, Appellees did not bear the burden at trial of re-establishing the fact of Dr. Brogan's capital contribution of the leased equipment to Brogan Ltd. because those issues were tried by consent before the trial court. Rather, Appellants had the burden of proving their affirmative claims for relief at trial, *i.e.,* Dr. Brogan breached a duty owed to Brogan Ltd.

## 2. Waiver and Trial by Consent

Appellant contends that a jury instruction on the propriety of the accounting for Dr. Brogan's capital contributions was required because the parties tried an action for improper accounting and credit of Dr. Brogan's capital contributions by consent. Again, we disagree.

18

Appellants' Third Amended Petition did not plead any cause of action for improper accounting and/or improper credit of Dr. Brogan's capital contributions. Neither did Appellants seek any jury instruction on such a cause of action. As a result, they waived any ground of recovery for the unpleaded action at the jury trial. *See Gulf States Utilities Co. v. Low*, 79 S.W.3d 561, 570 (Tex. 2002) (When an entire ground of recovery is omitted from the jury charge, that ground is waived.); *In the Interest of* T.J.S., 71 S.W.3d 452, 457 (Tex.App.—Waco 2002, pet. denied) (Failure to present requested questions or instructions to the jury constitutes waiver of the right to do so.); *Rao v. Rodriguez*, 923 S.W.2d 176, 180 (Tex.App.—Beaumont 1996, no writ) (If all essential elements of a cause of action are not submitted to the jury, the ground for recovery is waived.).[5]

Appellants' contention that the unpleaded action for improper accounting and capital contribution was tried by consent is also untenable. Trial by consent should only be applied

[5]The issue Appellants claim was omitted but should have been submitted in the charge was actually a damage issue upon which Appellants had the burden of proof. This is evidenced by the instruction given for breach of partnership duty, Question No. 5 of the Charge, which calculated Appellants' damages by the difference between the distribution Tina received according to Guven's accounting and the distribution she should have received "but for the wrongful capital contributions, if any, caused by Walter Charles Brogan, III" to his capital account. The jury did not reach this question because they made a prior determination in their answer to Question No. 4 that Dr. Brogan complied with his partnership duties with regard to the capital credits. However, in order to make a determination under Question No. 5, the jury would have had to determine each parties' percentage of ownership through a recalculation of the capital accounts. As such, this is the same determination Appellants are now seeking by way of their appeal. Because a similar issue was submitted to the jury, an error, if any, in not submitting a specific issue on ownership percentages to the jury would be harmless, particularly where the jury found no liability on the part of Appellees.

in exceptional cases; *Austin Area Teachers Federal Credit Union v. First City Bank-Northwest Hills, N.A.*, 825 S.W.2d 795, 800 (Tex.App.—Austin 1992, writ denied), where the evidence on the issue is developed under circumstances indicating that *both* parties understood the issue in the case, and the other party failed to make an appropriate complaint. *Emerson Electric Co. v. American Permanent Ware Co.*, 201 S.W.3d 301, 309 (Tex.App.—Dallas 2006, no pet.).  Trial by consent does not apply when the evidence of the unpleaded matter is also relevant to the pleaded issues because it would not be calculated to elicit an objection.  *In the Interest of J.M. and L.M.*, 156 S.W.3d 696, 706 (Tex.App.—Dallas 2005, no pet.) (collected cases cited therein).  Here, evidence of the partnership accounting and capital contribution was relevant not only to prove Appellants' action for breach of partnership duties, but it was relevant to Appellees' defense against Appellants' tort action.  Accordingly, trial by consent is inapplicable.  *See Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993).

### 3.  Sufficiency of Jury Finding In Favor of Appellees

Appellants had the burden of proof on all their remaining causes of actions tried to the jury.  Thus, their legal sufficiency challenge to the jury's findings will be reviewed under the "matter of law" standard.

The jury found in favor of Appellees when asked in Question No. 4 of the Charge whether Dr. Brogan failed to comply with his partnership duties to Appellants by authorizing credits to his capital account made in 2003.  Applying the "matter of law" standard, the Court

20

must examine the record to determine if any evidence exists supporting the jury's finding that Dr. Brogan did not authorize any wrongful entry of credits to his capital account, while ignoring any evidence to the contrary. *See Raw Hide Oil & Gas v. Maxus Exploration*, 766 S.W.2d at 276. If such evidence exists, Appellants' challenge fails. *Id*.

Guven's accounting was also admitted into evidence at the jury trial without objection. She was qualified as an expert witness and testified that she performed the accounting to determine the status of the partnership capital accounts and the ownership interests of the partners. She also testified that the accounting complied with generally accepted accounting practices, the rules of the Partnership Agreement, and IRS Treasury Regulations. She acknowledged that she requested information from both parties to prepare the accounting. She testified that partner capital accounts were calculated based on their beginning balance plus any contributions made by any particular partner less any distributions to the partner. Guven stated that BancLeasing calculated the fair market value of the x-ray equipment and telephone system at $243,574.02. She testified that BancLeasing's sale of the leased equipment to Dr. Brogan supplied an adequate basis for determining the fair market value of the leased equipment, *i.e.,* an arm's-length transaction. In her opinion, the purchase price paid by Dr. Brogan for the leased equipment was the equipment's fair market value.

She testified that Brogan P.A. transferred the leased equipment to Dr. Brogan, on the date of the sale of the building, in exchange for a promissory note for the value of the

equipment. She further testified that Dr. Brogan then contributed the leased equipment to the sale of the property owned by Brogan Ltd. as a capital contribution. At the time of the transactions, she checked with Leaverton to determine the sequence of the events, and he indicated the sale of the building occurred prior to the sale of the leased equipment. Accordingly, she applied the loss from the sale of the building to Brogan Ltd.'s capital accounts first, and then applied Dr. Brogan's subsequent capital contribution to his capital account. After the hearing by the trial court, Guven paid out approximately $315,000 to Dr. Brogan for his limited and general partnership interests, from which Dr. Brogan then paid off his note to Brogan P.A.

Accordingly, we find that Guven's accounting, her testimony, the corroborating testimony of other witnesses, and underlying documentary evidence supplies ample evidence upon which the jury could have relied to determine the accounting related to the sale of the leased equipment was proper and that, Dr. Brogan did not breach any partnership duties. Issue one is overruled.

## IV. Issue Two

Appellants assert that because the trial court rejected a jury instruction tendered by Appellees requesting the jury determine the percentage of ownership interest of the Brogans in Brogan Ltd., Appellants are somehow entitled to judgment as a matter of law or reversal/remand. Appellants cite no legal authority in support of this assertion. Accordingly, their contention is insufficiently briefed and, therefore, waived. *See White v. Baptist St.*

*Anthony's Hosp.*, 188 S.W.3d 373, 374 (Tex.App.—Amarillo 2006, pet. denied) *citing* Tex. R. App. P. 38.1(h); *Jordan v. Jefferson County*, 153 S.W.3d 670, 676 (Tex.App.—Amarillo 2004, pet. denied). Appellant's second issue is overruled.

### V. Issue Three - Promissory Estoppel

Appellants challenge the directed verdict granted on their action for promissory estoppel. At the conclusion of Appellants' case-in-chief, the trial court granted Appellees' motion for a directed verdict on the grounds that no signed lease, or draft lease for the building that Dr. Brogan had promised to sign, existed at the time Appellants sought to enforce an alleged oral promise by Dr. Brogan to enter into a lease for a period of ten years.

Promissory estoppel is an equitable exception used to avoid a statute of frauds defense. *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 936 (Tex. 1973). It is a defensive plea that does not create a contract where none existed before, but rather prevents a party from insisting upon its strict legal rights under the statute of frauds, when enforcing a non-compliant agreement would be necessary to avoid an injustice. *Id.*

Appellants seek to use the doctrine of promissory estoppel as an affirmative basis for relief. While recognizing there is authority to the contrary, 34 Tex.Jur. 3D *Estoppel* § 12 (2002), this Court has held, and holds in this case, that promissory estoppel is defensive only, and cannot constitute a basis for affirmative relief. *Robbins v. Payne*, 55 S.W.3d 740, 747 (Tex.App.—Amarillo 2001, pet. denied). *See also Hruska v. First State Bank*, 747

23

S.W.2d 783, 785 (Tex. 1988); *Stanley v. CitiFinancial Mortgage Co., Inc.,* 121 S.W.3d 811, 820 (Tex.App.—Beaumont 2003, pet. denied).  Issue three is overruled.

**CONCLUSION**

Having overruled Appellants' issues, we affirm the trial court's judgment.

Patrick A. Pirtle<br>Justice

Reavis, S.J., concurring in result.